# NO. 12-12-00357-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***ETMC FIRST PHYSICIANS AND*** | § | ***APPEAL FROM THE 2ND*** |
| ***KRISTIN AULT, D.O.,*** | | |
| ***APPELLANTS*** | | |
| | | |
| ***V.*** | | |
| | | |
| ***MELISSA VAN NESS, INDIVIDUALLY*** | | |
| ***AND AS NEXT FRIEND, AN HEIR AT*** | | |
| ***LAW, AND A SURVIVING PARENT OF*** | § | ***JUDICIAL DISTRICT COURT*** |
| ***NICHOLAS VAN NESS, RONALD VAN*** | | |
| ***NESS, INDIVIDUALLY, AND AS NEXT*** | | |
| ***FRIEND OF, AN HEIR AT LAW, AND A*** | | |
| ***SURVIVING PARENT OF NICHOLAS*** | | |
| ***VAN NESS AND ESTATE OF*** | | |
| ***NICHOLAS VAN NESS,*** | | |
| ***APPELLEES*** | § | ***CHEROKEE COUNTY, TEXAS*** |

***MEMORANDUM OPINION***

ETMC First Physicians and Kristin Ault, D.O. appeal the trial court's order denying their motion to dismiss the lawsuit against them filed by Melissa Van Ness, Individually and as Next Friend, an Heir at Law, and a Surviving Parent of Nicholas Van Ness; Ronald Van Ness, Individually, and as Next Friend of, an Heir at Law, and a Surviving Parent of Nicholas Van Ness; and the Estate of Nicholas Van Ness. In their sole issue, ETMC and Ault contend that the trial court abused its discretion when it overruled their motion to dismiss the Van Nesses' suit for failure to comply with the expert report requirements under Chapter 74 of the Texas Civil Practice and Remedies Code.[1] We reverse the order of the trial court, dismiss in part, and remand in part.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2013).

BACKGROUND

Melissa and Ronald Van Ness filed suit against ETMC First Physicians and Dr. Ault, alleging that their negligence caused the death of their son Nicholas.[2] The Van Nesses attempted to comply with the expert report requirements by filing a report from Dr. Alvin Jaffee within the applicable time period. ETMC First Physicians and Dr. Ault filed joint objections to the report and a motion to dismiss, alleging that the report failed to adequately establish causation. The trial court entered an order agreeing with ETMC First Physicians and Dr. Ault, but granted a thirty day extension to the Van Nesses so that they could amend their report and cure its deficiencies regarding causation. Dr. Jaffee amended his report.

In the amended report, Dr. Jaffee stated that Nicholas Van Ness was born on November 13, 2009. Melissa and Ronald took Nicholas to see Dr. Ault on November 19, 2009, and November 30, 2009. At those visits, Nicholas was well and there were no concerns regarding his health. Melissa and Ronald took Nicholas to see Dr. Ault again on December 11, 2009, when he was exactly four weeks old. Nicholas had a fever and nasal congestion. Dr. Jaffee noted that Nicholas's medical records did not disclose whether his temperature was taken rectally or orally, or if any medications had been given to Nicholas prior to the visit. Melissa told Dr. Ault that Nicholas had facial discoloration and that he had been coughing to the point that he could not breathe. Dr. Jaffee also noted that the medical records do not show whether Dr. Ault performed any medical tests during this visit. However, Dr. Jaffee did not discuss whether Dr. Ault created a treatment plan or prescribed any medications to Nicholas during this visit.

Dr. Jaffee stated in his report that even though there were no medical records or billing records showing a further office visit, Melissa and Ronald stated that they returned to Dr. Ault's office on December 15, 2009, and reported that Nicholas's symptoms had worsened. According to Melissa and Ronald, Dr. Ault removed Nicholas from his car seat and physically examined him, but did not listen to his breathing or perform any tests on him. No lab blood tests or X-rays were obtained.

Five days later on December 20, 2009, Nicholas was taken to East Texas Medical Center in Jacksonville and treated for acute pneumonia, wheezing, and tachycardia. The following day,

---

[2] The Van Nesses allege that ETMC First Physicians is vicariously liable to them solely because of its employment relationship with Dr. Ault, and not because of any direct negligent acts on its part. The Van Nesses also sued Justin McInnis, but later filed an amended petition dismissing McInnis from the lawsuit. He is not a party to this appeal.

Nicholas was transferred to Children's Medical Center Hospital in Dallas, Texas. Approximately one month later, on January 20, 2010, Nicholas died of pertussis respiratory illness (whooping cough).

Dr. Jaffee stated that Dr. Ault should have conducted a more thorough physical examination, completed various lab tests, and started Nicholas on a preventative regimen of antibiotics.[3] Dr. Jaffee concludes that had she done so, Nicholas likely would not have died.

ETMC First Physicians and Dr. Ault renewed their objections and motion to dismiss, again contending that the report failed to adequately demonstrate causation. After a hearing, the trial court overruled their objections and motion to dismiss. This appeal followed.

## EXPERT REPORT

In their sole issue, ETMC First Physicians and Dr. Ault contend that the trial court abused its discretion when it overruled their motion to dismiss the Van Nesses' suit for failure to comply with the expert report requirements on causation under Chapter 74.

### Standard of Review

We review a trial court's Section 74.351 ruling for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex. App.—Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003)). We may not substitute our judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

### Applicable Law

An "expert report" is a written report that provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the defendant failed to meet those standards, and the causal relationship between the defendant's failure and the

---

[3] Dr. Jaffee also opined that Dr. Ault should have admitted Nicholas to a treatment facility, but the parties do not discuss this conclusion in their briefs in any detail. In any event, it appears from the report that Dr. Jaffee focused mostly on Dr. Ault's failure to administer antibiotics as the reason for Nicholas's death.

plaintiff's injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.35l(r)(6) (West Supp. 2013). In setting out the expert's opinions on each of the required elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort. *Palacios*, 46 S.W.3d at 879. An objective good faith effort to comply with the statute is made if the report (1) informs the defendant of the specific conduct that the plaintiff has called into question and (2) allows the trial court to conclude that the claim has merit. *Id.* at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not provide the necessary information to fulfill the dual purposes. *Id.* Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mental Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). In our review of an expert report, we are limited to the report's contents, contained within the four corners of the report, in determining whether the report manifests a good faith effort to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l* ); *Palacios*, 46 S.W.3d at 878.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Merely providing some insight into the plaintiff's claims does not adequately address causation. *Wright*, 79 S.W.3d at 53. Accordingly, causation cannot be inferred; it must be clearly stated. *Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App.—El Paso 2008, no pet.). Indeed, we may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).

However, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. The report can be informal, meaning that it does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Id.*

**Discussion**

Dr. Jaffee stated in his report that when Dr. Ault evaluated Nicholas Van Ness on December 11, 2010, and diagnosed fever, she should have taken the following actions:

- Performed a full physical exam including vital signs, pulse oximetry, respiratory rate and CBC;
- Performed a complete septic work-up, including

4

- o complete blood count
- o blood culture
- o urinalysis and urine culture
- o spinal tap so that doctors can order an examination of the spinal fluid, including a spinal fluid culture
- o chest x-ray (although this is often left out if the child lacks respiratory symptoms)
- o stool studies if the baby has diarrhea
- o viral test or culture, such as an RSV prep or flu test
- Performed additional laboratory tests, such as culture, polymerase chain reaction [PCR], direct fluorescent antibody [DFA] and serology;
- Administered antibiotics prophylactically while the test[s] are pending; and/or
- Admitted Nicholas to a medical facility for further evaluation.

Dr. Jaffee went on to conclude that had Dr. Ault done so, "[i]t is within a reasonable degree of medical certainty and/or with 51% certainty that had Dr. Ault appropriately evaluated and diagnosed him, Nicholas Van Ness would have received the appropriate dosage and treatment of antibiotics in a timely manner, and he would not have expired on January 20, 2010."[4]

However, Dr. Jaffee's conclusion does not follow from the facts he described in his report. In describing pertussis in relation to its effects on infants, Dr. Jaffee noted that "[i]nfection in newborns is particularly severe. Pertussis is fatal in an estimated one in 100 infants under two months, and fatal in one in 200 infants aged two to twelve months." Dr. Jaffee stated that"[r]eported fatalities from pertussis in infants have increased substantially over the past 20 years." Dr. Jaffee went on to mention that "[p]revention via vaccination is of primary importance because treatment is of little benefit to the person affected." Infants as young as Nicholas will not be completely vaccinated. Consequently, Dr. Jaffee asserts "[u]nvaccinated or incompletely vaccinated infants younger than 12 months of age have the highest risk for severe and life-threatening complications and death[, and in such a case,] prophylactic antibiotics . . . are still frequently used in those who have been exposed and are at high risk of severe disease (such as infants)." Dr. Jaffee stated that antibiotics may "shorten the duration of infectiousness

---

[4] Dr. Jaffee made other similar conclusions elsewhere in his report. For example, he stated as follows:

None of the protocols outlined in this report were followed by Dr. Ault. In my opinion to a reasonable degree of medical certainty, had Dr. Ault performed any of these tests, it would have shown *Bordetella pertussis* at a treatable stage and but for the failure to treat Nicholas Van Ness as outlined above he would have had a 51% or more chance of survival.

and are thus recommended." Even though early treatment is of little benefit to the person affected, Dr. Jaffee contends in his report that

> [e]arly treatment of pertussis is very important. The earlier a person, especially an infant[,] starts treatment[,] the better. If treatment for pertussis is started early in the course of illness, during the first one to two weeks before coughing paroxysms occur, symptoms may be lessened. Clinicians should strongly consider treating prior to test results if clinical history is strongly suggestive or patient is at risk for severe or complicated disease, e.g. infants. If the patient is diagnosed late, antibiotics will not alter the course of the illness and, even without antibiotics, the patient should no longer be spreading pertussis.

Finally, Dr. Jaffee states that "[a] reasonable guideline is to treat . . . infants aged less than [one] year within six weeks of cough onset."

Thus, a review of Dr. Jaffee's report demonstrates that treatment is of little benefit to the person affected, but given the danger of pertussis to infants, prophylactic antibiotics should be administered to those infants exhibiting symptoms of the disease, even prior to obtaining the test results. Antibiotics are recommended because they may shorten the duration of infectiousness and limit its transmission to others. However, based on Dr. Jaffee's report, if treatment is administered early, at most, symptoms may be lessened, and that in the event of a late diagnosis, antibiotics will not alter the course of the illness. He then stated that the reasonable course of action would have been to treat infants such as Nicholas within six weeks of cough onset.

At the earliest, Nicholas began coughing on December 1, 2010. He began treatment on December 20, 2010, which was approximately three weeks from the earliest possible date he began to cough; yet he died one month later on January 20, 2011.[5] This was well within the reasonable guideline of treating the disease within six weeks of cough onset. Dr. Jaffee's conclusion that Nicholas would not have died had Dr. Ault begun treatment on December 11, 2010, or December 15, 2010, does not follow from the aforementioned discussion of the facts in his report.

Rather, because treatment is of little benefit to the person affected, the facts lead to the conclusion that had Dr. Ault provided antibiotics to Nicholas on either of those dates, at most Nicholas's symptoms may have lessened and his ability to spread the disease to others may have diminished. The facts discussed in the report do not show that treatment would have altered the

---

[5] Dr. Jaffee opined in his report that had Dr. Ault conducted the proper medical tests, she should have administered antibiotics prophylactically, even prior to learning of the pertussis test results. Consequently, based on Dr. Jaffee's analysis, we treat Dr. Ault's failure to provide antibiotics as the critical event, not her failure to conduct the tests.

course of the disease, but lead to the conclusion that Nicholas was unfortunately one of those infants who did not survive despite timely treatment.

The Van Nesses also contend that Dr. Jaffee was not required to rule out every possible cause, at least for purposes of satisfying the expert report requirement in a healthcare liability claim. *See, e.g., **Hillery v. Kyle***, 371 S.W.3d 482, 492 (Tex. App.—Houston [1st Dist.] 2012, no pet.). While Dr. Jaffee may not have been required to rule out all possible causes, he must establish in his report some causal connection between the defendants' conduct and Nicholas's death. The statements concerning causation cannot be inferred, speculative, or conclusory. *See* ***Wright***, 79 S.W.3d at 53; ***Castillo***, 248 S.W.3d at 883; ***Webb***, 228 S.W.3d at 279. Moreover, the conclusion must link to the facts. *See* ***Wright***, 79 S.W.3d at 52. As we have discussed, Dr. Jaffee's report fails in this regard. Consequently, the Van Nesses failed to establish that Dr. Ault's failure to diagnose or provide prophylactic antibiotics caused Nicholas's death.

The trial court or a court of appeals may grant a thirty day extension in which to amend a timely filed but deficient expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); ***Leland v. Brandal***, 257 S.W.3d 204, 207–08 (Tex. 2008). However, the statute allows only a single extension. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). Once an extension has been granted by the trial court, the court of appeals is without authority to grant another extension. *See **id.*** Because the trial court previously granted the Van Nesses an extension to amend their expert report, we are without authority to grant another extension and must dismiss their suit.

ETMC First Physicians and Dr. Ault's sole issue is sustained.


### DISPOSITION

We have sustained ETMC First Physicians and Dr. Ault's sole issue. Consequently, we *reverse* the order of the trial court, *render* judgment that the Van Nesses' claims against ETMC First Physicians and Ault be ***dismissed with prejudice***, and *remand* the cause for a determination of the amount of attorney's fees and costs to be awarded ETMC First Physicians and Dr. Ault. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1).

**BRIAN HOYLE**
Justice

Opinion delivered March 31, 2014.
*Panel consisted of Worthen, C.J., and Hoyle, J.*
*Griffith, J., not participating.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

MARCH 31, 2014

NO. 12-12-00357-CV

**ETMC FIRST PHYSICIANS AND KRISTIN AULT, D.O.,**
Appellants
V.
**MELISSA VAN NESS, INDIVIDUALLYAND AS NEXT FRIEND, AN HEIR AT LAW,
AND A SURVIVING PARENT OF NICHOLAS VAN NESS,
RONALD VAN NESS, INDIVIDUALLY, AND AS NEXT FRIEND OF,
AN HEIR AT LAW, AND A SURVIVING PARENT OF NICHOLAS VAN NESS
AND ESTATE OF NICHOLAS VAN NESS,**
Appellees

Appeal from the 2nd District Court

of Cherokee County, Texas (Tr.Ct.No. 2011-12-0993)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the order be **reversed** and judgment rendered that the Van Nesses' claims against ETMC First Physicians and Ault be **dismissed with prejudice**, the cause **remanded** to the trial court for a determination of the amount of attorney's fees and costs to be awarded ETMC First Physicians and Dr. Ault, and that all costs of this appeal are hereby adjudged against the Appellees, **MELISSA VAN NESS, INDIVIDUALLYAND AS NEXT FRIEND, AN HEIR AT LAW, AND A SURVIVING PARENT OF NICHOLAS VAN NESS, RONALD VAN NESS, INDIVIDUALLY,  AND AS NEXT FRIEND OF, AN HEIR AT LAW, AND A SURVIVING PARENT OF NICHOLAS VAN NESS AND ESTATE OF NICHOLAS VAN NESS,** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., and Hoyle, J.*
*Griffith, J., not participating.*