**Reversed and Remanded and Memorandum Opinion filed May 17, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00643-CV

---

**CHRISTUS HEALTH GULF COAST, D/B/A CHRISTUS ST. JOHN HOSPITAL, AND CHRISTUS ST. JOHN HOSPITAL, Appellants**

**V.**

**ALISON DAVIDSON, INDIVIDUALLY, AS HEIR, AND AS INDEPENDENT ADMINISTRATRIX AND REPRESENTATIVE OF THE ESTATE OF PAUL ALAN DAVIDSON, DECEASED, CAROLYN DAVIDSON, LANCE DAVIDSON, ALEX DAVIDSON, DEREK DAVIDSON, AND STEFANIE DAVIDSON, INDIVIDUALLY AND AS HEIRS OF THE ESTATE OF PAUL ALAN DAVIDSON, DECEASED, Appellees**

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2014-20812**

---

## M E M O R A N D U M   O P I N I O N

In this health-care liability case, a hospital challenges the trial court's adverse ruling on the hospital's objections to an expert medical report and motion

to dismiss health-care liability claims for a plaintiff's failure to file an expert report in compliance with section 74.351 of the Texas Civil Practice and Remedies Code. Because the expert report fails to satisfy the statutory requirements as to causation, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Dr. Mary Mercado evaluated Paul Alan Davidson in November 2011, for recurrent and progressive angina.  In February 2012, Davidson underwent a "CTA" for his worsening angina.  The CTA revealed heavy calcification of the left main coronary artery and left circumflex coronary artery with moderate stenosis. Davidson's right coronary artery was moderately calcified with stenosis.

Davidson developed acute coronary syndrome characterized by further worsening of angina and an elevated Troponin level.  Davidson was admitted to the hospital, where his condition deteriorated. A few days later, Dr. Mercado performed an emergency cardiac catheterization and coronary arteriogram. Davidson was in cardiogenic shock at that time, and he died in spite of Dr. Mercado placing an emergency intra-aortic balloon and performing an angioplasty with stent implantation.

Appellees/plaintiffs Alison Davidson, individually, as heir, and as independent administratrix and representative of the estate of Paul Alan Davidson, deceased, Carolyn Davidson, Lance Davidson, Alex Davidson, Derek Davidson, and Stefanie Davidson, individually and as heirs of the estate of Paul Alan Davidson, deceased (hereinafter the "Davidson Parties") filed suit against Mary Mercado, M.D., Mary Mercado M.D., P.A., Christus Health Gulf Coast, d/b/a Christus St. John Hospital, and Christus St. John Hospital.  The Davidson Parties asserted  wrongful death and survival claims and alleged that appellants Christus

2

Health Gulf Coast, d/b/a Christus St. John Hospital, and Christus St. John Hospital (hereinafter the "Hospital Parties") were negligent in (1) failing to identify signs and symptoms of Davidson's impending heart attack, (2) failing to appropriately respond to and treat the signs and symptoms of Davidson's impending heart attack, and (3) failing to inform Dr. Mercado of the signs and symptoms of Davidson's impending heart attack.

In an attempt to comply with section 74.351 of the Texas Civil Practice and Remedies Code, the Davidson Parties filed expert reports by Dr. Neal Shadoff and Alexis Williams, RN, BSN. The Hospital Parties moved to dismiss based on the alleged insufficiency of the expert reports. The trial court signed an agreed order of the parties stating that the Davidson Parties' expert reports were deficient as to causation and granting the Davidson Parties thirty days to cure the deficiency. The Davidson Parties filed amended expert reports. The Hospital Parties again moved to dismiss on the ground that the amended expert reports were deficient with respect to causation. The trial court denied the Hospital Parties' motion to dismiss, and the Hospital Parties filed this interlocutory appeal challenging the trial court's order denying their motion to dismiss the claims under section 74.351 of the Texas Civil Practice and Remedies Code.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West, Westlaw through 2015 R.S.) (providing that a trial court's order denying a party's motion to dismiss under section 74.351(b) of the Medical Liability Act is an appealable interlocutory order).

## II.   STANDARD OF REVIEW

We apply an abuse-of-discretion standard when reviewing a trial court's decision regarding the adequacy of an expert report. *See Van Ness v. ETMC First*

---

[1] Unless otherwise noted, all references to a "section" or "subsection" pertain to the Texas Civil Practice and Remedies Code.

3

*Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). The trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Although this court may not substitute its judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts. *Id.*; *Sanjar v. Turner*, 252 S.W.3d 460, 463 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

### III.     ANALYSIS

In a single issue, the Hospital Parties assert the trial court abused its discretion in denying their motion to dismiss because the expert reports are insufficient. In particular, the Hospital Parties assert that the only statements in the reports providing an opinion on causation are conclusory.

Under section 74.351, a claimant, not later than the 120th day after the date a health-care liability claim is filed, must serve on each party one or more expert witness reports addressing liability and causation. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j) (Vernon 2005); *Lewis v. Funderburk*, 253 S.W.3d 204, 205 (Tex. 2008). An "expert report" is defined as

> A written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West, Westlaw through 2015 R.S.). A trial court shall grant a motion challenging the adequacy of the expert report if the report is not an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6). *Id.* §§ 74.351(*l*),

4

(r)(6). The trial court's inquiry is limited to the four corners of the report. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

The report must provide sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *See id.* at 539. Omission of any of the statutory elements prevents the report from being a good-faith effort. *See id.* A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *See id.* In providing the expert's opinions on these elements, the claimant need not marshal evidence as if actually litigating the merits at trial or present sufficient evidence to avoid summary judgment. *See id.* When a claimant sues more than one defendant in a health-care liability claim, the report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *Sanjar v. Turner*, 252 S.W.3d 460, 465 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

The Davidson Parties filed two expert reports, one report authored by Williams and another report authored by Dr. Shadoff. With regard to Davidson's condition while in the care of the Hospital Parties, Dr. Shadoff stated:

- Davidson's symptoms upon his hospitalization — acute coronary syndrome characterized by worsening angina associated with an elevated level of Troponin — provided unequivocal objective evidence of myocardial ischemia/necrosis. Davidson's EKG results were un-interpretable for acute ischemia/infarction.

- Acute coronary syndrome with myocardial infarction and an uninterpretable EKG is an indication for emergency cardiac catheterization within the first twenty-four hours of hospitalization.

- Recurrent and progressive angina with abnormal stress test results requires cardiac catheterization.

- Dr. Mercado breached the standard of care by failing to recommend and perform urgent cardiac catheterization within twenty-four hours of evaluating Davidson at the hospital.

- Dr. Mercado pursued non-cardiac treatment because of Davidson's elevated "INR" from chronic warfarin therapy, but Dr. Mercado should have understood that anticoagulation caused by warfarin could be emergently reversed by administering vitamin K. Based upon Davidson's other symptoms, Dr. Mercado should have recognized that Davidson needed cardiac catheterization. Dr. Mercado breached the standard of care by failing to reverse the warfarin anticoagulation if it contraindicated the necessary cardiac catheterization.

- Based upon a reasonable medical probability, if cardiac catheterization had been performed prior to the emergency of the afternoon of February 13, revascularization would have been feasible, and more likely than not successful, and Davidson would have survived at least ten more years if optimal medical therapy in combination with coronary revascularization had been performed in a reasonable and timely fashion.

- Williams's analysis is correct:

  > [h]er reasoning is sound and her outline of the events as well as her opinions are consistent with my own review and opinions. It is my opinion that the standard of care for hospital nursing staff agents and/or employees who provided care to Mr. Davidson as outlined by Nurse Williams in her report is accurate and that the breaches of the standard of care as listed by Nurse Williams in her report caused or contributed to cause the death of Paul Davidson.

In her expert report, Williams stated:

- The standard of care for the Hospital Parties acting through and by their respective nursing staff, agents, or employees required the nurses to appropriately communicate their nursing assessments, physical examination findings, and critical lab results that evaluate Davidson's risk and identify the signs and symptoms of his declining condition and impending myocardial infarction and to timely communicate these findings to Dr. Mercado or the attending physician.

- The nurses caring for Davidson failed to perform adequate assessments and physical examinations of Davidson to evaluate his risk for myocardial infarction and failed to identify signs and symptoms of myocardial infarction.

- The nurses caring for Davidson breached the standard of care by failing to identify signs and symptoms indicating a decline in Davidson's medical condition and recognize them as a medical emergency that needed to be addressed in a timely manner.

- The nurses caring for Davidson breached the standard of care by failing to adequately communicate their nursing assessments, physical examination findings and critical lab reports.  In addition the nurses inadequately used the chain of command to advocate for their patient during his hospital stay.

- Nurses breached the standard of care by failing to follow up on telephone calls to physicians regarding Davidson's critical levels of Troponin on February 12th at 3:02 a.m., 2:50 p.m., and 7:04 p.m.

- The nurse on duty breached the standard of care by failing to timely advise physicians of Davidson's blood pressure drop to 90/54 on February 13th at midnight.

- The nurse advised a physician that Davidson's chest pain was unrelieved by several medications, Davidson was diaphoretic, nauseated, weak, and had cool extremities, but the nurse failed to obtain a timely response by the physician on February 13th at 8:00 a.m.

- Nurses did not timely notify the rapid-response team, nurse manager or nurse director.

- The nurse failed to timely notify a physician that Davidson rated his chest pain as a 9-10 on a scale of 1-10 on February 13th at 5:00 a.m.

- Nursing staff failed to advocate for a qualified physician to intervene and assess Davidson following his worsening chest pain and failure to respond to treatment.

- The nurses breached the standard of care by failing to institute appropriate nursing interventions to stabilize Davidson's condition and prevent complications.  The appropriate nursing interventions included notifying the rapid-response team and communicating changes to a physician.  No other specific interventions were listed.

- When a nurse did not receive a return phone call from a physician regarding critical results, the nurse should have re-notified the physician within twenty minutes and escalated the situation up the chain of command to the charge nurse, nurse manager, or medical director if the physician did not timely respond to the second phone call. The Hospital Parties should have ensured appropriate parameters were in place for nurses to communicate imminent changes in a patient's condition.

In her report, Williams also stated:

- Nurses called critical Troponin levels to physicians and had the results read back by the physician on February 12th at 11:29 a.m. and that a physician was on the unit at 11:45 a.m. the same day.
- Critical test results were read back by a physician on February 12th at noon.
- Dr. Mercado clarified her orders on February 13th at 10:06 a.m. and again at 10:32 a.m.
- Dr. Mercado ordered Amiodarone at 1:45 p.m. on February 13th.
- Laboratory results were read back by a physician at 3:59 p.m. on February 13th.
- Dr. Mercado and Dr. Hamer were present at 7:40 p.m. and determined Davidson should go to the catheterization laboratory.

Dr. Shadoff did not indicate any breaches in the standard of care by the Hospital Parties other than by incorporating Williams's assessment into his own. Williams did not state a causation theory. *See Aramburo v. Brown*, No. 14-12-00812-CV, 2013 WL 3580640, at *3 (Tex. App.—Houston [14th Dist.] Jul. 11, 2013, no pet.) (mem. op.). The Davidson Parties argue that Williams's statement – that a prudent and competent nurse would have assessed Davidson, identified obvious signs and symptoms and recognized them as a medical emergency that needed be addressed in a timely manner – constituted a causation theory. Williams did not identify which signs and symptoms nurses were not tracking or identifying. Nor did Williams state that recognizing those signs or symptoms would have

8

changed Davidson's care.

Dr. Shadoff stated that the "breaches of the standard of care as listed by Nurse Williams in her report caused or contributed to cause the death of Paul Davidson." This conclusory statement fails to provide a causal link between Davidson's death and the failure to identify symptoms or the failure to communicate nursing assessments and critical lab results. *See Al-Lahiq v. Rosemond*, No. 14-13-00158-CV, 2013 WL 5969720, at *5 (Tex. App.—Houston [14th Dist.] Nov. 7, 2013, no pet.) (mem. op.). Neither expert explains how more frequent communication or receiving more physician responses would have changed the outcome for Davidson. Neither expert explains the causal relationship between the acts of the Hospital Parties that allegedly breached the standard of care and Davidson's injuries. *See Baytown Radiology Ass'n v. Carlton*, No. 14-09-00705-CV, 2010 WL 2573880, at *3–4 (Tex. App.—Houston [14th Dist.] Jun. 29, 2010, no pet.) (mem. op.). This failure to address causation is particularly problematic in light of Williams's report, which shows the nursing staff was in communication with Dr. Mercado and physicians many times throughout the day on February 12th and February 13th. Specifically, Williams's report shows physicians were aware of Davidson's critical lab results and condition on both days and those communications did not result in Davidson receiving emergency catheterization. Neither Williams nor Dr. Shadoff stated that providing physicians with additional communications would have resulted in Davidson receiving emergency catheterization. There is no explanation of how additional communications would have affected Davidson's care.

In her report, Williams stated that failures to communicate or receive responses on February 12th and the morning of February 13th were breaches in the standard of care. The Davidson Parties assert that each breach represented a delay

9

in relating Davidson's deteriorating condition, but there is no statement in either expert report that any of these breaches delayed Davidson's care. The Davidson Parties rely upon Dr. Shadoff's statement that Davidson needed emergent cardiac catheterization when he was evaluated February 11th, but this statement does not explain how further communication with Dr. Mercado, the nurse manager, medical director, or attending physician would have changed Davidson's care or led to an earlier emergency catheterization. Williams's report shows that nurses were in touch with Dr. Mercado a few hours after the alleged breaches in the standard of care. After the alleged breaches, Dr. Mercado clarified her orders on the morning of February 13th, and Dr. Mercado ordered new medication in the early afternoon. At neither of those times did Dr. Mercado choose to order an emergency catheterization. Williams's report indicates that a physician read back critical laboratory results at 3:59 p.m. on February 13th, and, even then, the physician did not conduct an emergency catheterization.

The Davidson Parties argue on appeal that if something had been addressed earlier, Davidson would not have died, but neither expert report provides any evidence that if the nursing staff had received physician read-backs on all of the critical laboratory results and changes in Davidson's condition on February 12th or the morning of February 13th, as opposed to receiving read-backs and communications from a physician regarding some of Davidson's critical laboratory results, Davidson's care would have been different.

Considering the four corners of Dr. Shadoff's expert report, including the incorporation of Williams's report, we conclude that the averments and opinions in the expert report contain conclusory statements concerning causation. *See Jelinek*, 328 S.W.3d at 539–40; *Baytown Radiology Ass'n*, 2010 WL 2573880, at *3–4. Dr. Shadoff's expert report does not explain the causal relationship between the

Hospital Parties' allegedly negligent acts and Davidson's injuries. *See Jelinek*, 328 S.W.3d at 539–40; *Baytown Radiology Ass'n*, 2010 WL 2573880, at *3–4. Because she is not a physician, Williams is not qualified to be an expert witness on causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a) (West, Westlaw through 2015 R.S.). In any event, even if Williams were qualified to opine as to causation, her expert report does not explain the causal relationship between the Hospital Parties' allegedly negligent acts and Davidson's injuries. *See Jelinek*, 328 S.W.3d at 539–40; *Baytown Radiology Ass'n*, 2010 WL 2573880, at *3–4. Accordingly, the trial court abused its discretion in denying the Hospital Parties' motion to dismiss with prejudice the Davidson Parties' claims against them under section 74.351. We sustain the Hospital Parties' issue.

## IV. CONCLUSION

The trial court abused its discretion in determining that the expert reports were sufficient and in denying the Hospital Parties' motion to dismiss. We reverse the trial court's order and remand this case with instructions to the trial court (1) to dismiss the Davidson Parties' claims with prejudice under section 74.351(b), (2) to conduct further proceedings to determine the amount of reasonable attorney's fees that should be awarded to the Hospital Parties under this statute, and (3) to award the Hospital Parties reasonable attorney's fees and court costs incurred by the Hospital Parties.


/s/     Kem Thompson Frost
        Chief Justice



Panel consists of Chief Justice Frost and Justices Boyce and Wise.


11