Opinion filed June 6, 2019



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00115-CV
_____

**MCH PROFESSIONAL CARE AND
KRISTOPHER KINDLE, CRNA, Appellants
V.
YULISSA ZUBIA, INDIVIDUALLY AND AS REPRESENTATIVE
OF THE ESTATE OF ELPIDIA RIOS DE ZUBIA; RENE ZUBIA;
AND RENE ZUBIA, JR., Appellees**

**On Appeal from the 161st District Court
Ector County, Texas
Trial Court Cause No. B-16-12-1170-CV**

### MEMORANDUM OPINION

MCH Professional Care and Kristopher Kindle, CRNA, bring this interlocutory appeal from the trial court's denial of a motion to dismiss the health care liability claims brought by Appellees: Yulissa Zubia, individually and as representative of the Estate of Elpidia Rios De Zubia; Rene Zubia; and Rene Zubia, Jr. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*) (West 2017). Because the expert report filed by Appellees in support of their claims fails to state the specific conduct that breached the applicable standard of care and is conclusory

regarding causation, we reverse the trial court's order denying Appellants' motion to dismiss, and we remand this cause for further proceedings.

## Background Facts

Appellees alleged that Elpidia Rios de Zubia (Zubia) died while under general anesthesia for the "routine placement of a port-a-cath." Appellees brought health care liability claims against several health care providers and physicians connected with Zubia's procedure, including Kindle, a certified registered nurse anesthetist,[1] and his employer, MCH Professional Care (MCH). In their original petition, Appellees alleged that Kindle was responsible for "anesthetizing" Zubia during the procedure and that his failure to properly use and supervise the anesthesia equipment and to properly monitor Zubia caused Zubia's death. Appellees also asserted that MCH was vicariously liable for Kindle's alleged negligence.

Appellees attached the expert report of Dr. Michael Hurt, an anesthesiologist, to their original petition. *See* CIV. PRAC. & REM. § 74.351(a). Appellants objected to the report as insufficient and filed a motion to dismiss Appellees' claims against them. *See id.* § 74.351(a)–(c), (*l*). Appellants specifically argued that the report failed to specify how any conduct by Appellants deviated from the identified standards of care and did not adequately explain the causal relationship between Appellants' alleged negligence and Zubia's death. The trial court overruled Appellants' objections to Dr. Hurt's report and denied the motion to dismiss.

## Analysis

In a single issue on appeal, Appellants contend that the trial court abused its discretion when it overruled the objections to the sufficiency of Dr. Hurt's report and denied the motion to dismiss. *See id.* § 74.351(*l*), (r)(6).

---

[1]Throughout the record, the parties refer to Kindle as a "CRNA," an acronym for "certified registered nurse anesthetist." *See* AMERICAN ASSOC. OF NURSE ANESTHETISTS (AANA), https://www.aana.com (last visited May 24, 2019). CRNAs provide anesthesia to patients during surgical procedures. *Id.*

The Texas Medical Liability Act (the TMLA) requires health care liability claimants to serve an expert report upon each defendant within 120 days after the defendant files an answer. *Id.* § 74.351(a); *Scott v. Weems*, No. 17-0563, 2019 WL 1867916, at *2 (Tex. Apr. 26, 2019). The purpose of the expert report requirement is "to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam).

An expert report must provide a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered failed to meet that standard, and the causal relationship between the failure to meet the standard of care and the injury suffered. CIV. PRAC. & REM. § 74.351(r)(6); *Abshire*, 563 S.W.3d at 223; *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (citing former version TMLA). A trial court may grant a motion to dismiss under the TMLA only if it appears that the expert report is not an objective good faith effort to comply with the statutory requirements. CIV. PRAC. & REM. § 74.351(*l*). An expert report demonstrates a "good faith effort" when it informs the defendant of the specific conduct the plaintiff has called into question and provides a basis for the trial court to conclude that the claims have merit. *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018).

In order for a report to be sufficient under the TMLA, the expert is required to explain the basis of his statements and link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing former version TMLA); *see also Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). An expert report "need not marshal all the plaintiff's proof," but '[a] report that merely states the expert's conclusions about the standard of care, breach, and causation' is insufficient. *Palacios*, 46 S.W.3d at 878–79; *accord Abshire*, 563 S.W.3d at 223. In determining whether an expert report

contains the required information, a court must review the entire report, not just specific portions or sections. *Baty*, 543 S.W.3d at 694.

We review a trial court's decision to deny a motion to dismiss based on the sufficiency of an expert report for an abuse of discretion. *Abshire*, 563 S.W.3d at 223. In analyzing a report under this standard, we consider only the information contained within the four corners of the report. *Id.* We defer to the trial court's factual determinations if supported by the evidence but review its legal determinations de novo. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Id.*

Appellants first assert that the expert report was insufficient because Dr. Hurt failed to identify specific conduct by Appellants that breached the applicable standard of care. An expert report must inform the defendant of the specific conduct called into question. *Palacios*, 46 S.W.3d at 880. Although the plaintiff is required to provide only a "fair summary" of the expert's opinion, that summary "must set out what care was expected, but not given." *Id.* (quoting *Palacios v. Am. Transitional Care Ctrs. of Tex., Inc.*, 4 S.W.3d 857, 865 (Tex. App.—Houston [1st Dist.] 1999) (Taft, J., dissenting), *rev'd*, 46 S.W.3d 873 (Tex. 2001)). An expert's mere conclusion that the standard of care was not met does not constitute a "good-faith effort" to comply with the statutory requirements. *Id.*

In his report, Dr. Hurt stated that Zubia "passed away as a result of intraoperative complications during anesthesia." He opined that Appellants "are each liable for contributing and causing the death" of Zubia. We note at the outset that Dr. Hurt did not state in his report what intraoperative complications Zubia allegedly suffered or Appellants' role in either causing those complications or failing to overcome those complications.

Dr. Hurt set out two standards of care applicable to Kindle as a CRNA.[2] The first standard of care required Kindle to "[a]ccurately complete the pre-operative assessment and anesthetic plan." Dr. Hurt opined that this standard of care specifically required Kindle (1) to consider the option of Monitored Anesthesia Care and discuss that option with Zubia as a safer alternative to general anesthesia and (2) to not allow an inexperienced laryngoscopist (third-year medical student) to attempt an endotracheal intubation on a morbidly obese patient with a Mallampati score of III.

In addressing the alleged breach of this "pre-operative" standard of care, Dr. Hurt noted that, although the record did not indicate that Kindle discussed with Zubia a Monitored Anesthesia Care plan as a safer alternative to general anesthesia, "a general anesthetic is also an acceptable choice when properly and safely administered." Dr. Hurt also opined that, while Kindle exhibited poor judgment by allowing a medical student to attempt the intubation, Kindle quickly, successfully, and properly placed the intubation tube. Dr. Hurt, therefore, failed to identify any conduct by Kindle that breached the first identified standard of care.

Dr. Hurt stated that the second standard of care applicable to a CRNA required Kindle to properly check the anesthesia equipment, including the anesthesia machine and monitors, and to monitor Zubia during the procedure. He stated that Kindle was specifically required to check the anesthesia machine for leaks and assure that both of the alarms on the monitors were set at acceptable audible levels and that the ambient noise in the room was low enough to allow sufficient monitoring of the patient. As to MCH, Dr. Hurt opined that the applicable standard of care required that MCH, as Kindle's employer, accurately "check out" the anesthesia machine,

---

[2]Attached to Dr. Hurt's report were eleven "Standards of Care which may or may [sic] apply to CRNA (put out by the AANA)." Dr. Hurt did not specifically address these standards of care in his expert report, and we will not consider them in the appeal.

document this action, and maintain a professional operating room environment regarding noise, distractions, checklists, and standardized practices.

In addressing any breach by Kindle or MCH of these standards of care, Dr. Hurt stated that checking the anesthesia machine for leaks "would have likely identified the subsequent failure of the anesthesia machine and its associated ventilator during the delivery of anesthesia." However, he recognized that it was "not uncommon" for an anesthesia machine to fail and that, if the machine's failure is quickly recognized and corrective action taken, there is usually no resulting injury. After stating that his opinion regarding monitoring "really comes from what is NOT documented in this case than what is," Dr. Hurt opined:

> As we strive for standardization and efforts to follow evidence based practices in all areas of medicine to increase safety and efficiency, some common, yet unsafe practices do occur in the operating room. Therefore, this is what I question[:] Was a machine and monitor check done? Was the volume turned down on the monitors? Was the provider distracted by a phone, computer, reading a book, doing a crossword puzzle or even by talking with a medical student? Was the music turned up in the room? From what is documented (including the autopsy report), death doesn't make sense in this case unless there was a deviation from the standard of care as it relates to monitoring. For years, prior to the advent of advanced monitors, such as the pulse oximeter for example, vigilance of anesthesia providers was paramount due to reliance on their own clinical observations (more so than technology). With new technology and better equipment, the inherent risk is a false sense of security! The ultimate monitor is the anesthesia provider. Equipment used, machines and monitors are great, but they are mere tools for the ultimate monitor. If alarms are silenced what good are they? I have seen these deviations commonly occur and not lead to morbidity and mortality, but then again, you can do something wrong many times before the consequence catches up with you.

Finally, Dr. Hurt generally opined that Kindle and MCH "breached each of the above standards of care in providing medical care and treatment" to Zubia.

6

Dr. Hurt did not identify facts to support that any of the "unsafe practices" or "deviations" identified in the report occurred during Zubia's procedure, that Kindle was distracted during the procedure, or that either Kindle or MCH committed any act that constituted a breach of the applicable standard of care. Instead, Dr. Hurt essentially speculated that conduct constituting a breach of the standard of care must have actually occurred. However, an expert's mere conclusions on the breach of a standard of care are not sufficient to constitute a "good faith effort." *Palacios*, 46 S.W.3d at 879. We conclude that the report does not meet the statutory requirement that it show the manner in which the care rendered failed to meet the applicable standard of care. *See* CIV. PRAC. & REM. § 74.351(r)(6).

Appellants also contend that Dr. Hurt failed to provide in the report the necessary factual basis to support his opinion that negligence by Kindle or MCH caused Zubia's death. To comply with Chapter 74, an expert report must explain the causal relationship between the breach of the standard of care and the injury, harm, or damages claimed. *Id.* In other words, an expert is required to explain in the report "how and why" the alleged negligence caused the injury in question. *Abshire*, 563 S.W.3d at 224; *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010).

An expert's conclusory statement of causation is inadequate. *Abshire*, 563 S.W.3d at 224. Further, an expert report that speaks only of possibilities will not meet the statutory standard for causation. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53. However, a plaintiff is not required to prove her claim with the expert report. *Zamarripa*, 526 S.W.3d at 460. Rather, the report must show that a qualified expert is of the opinion that he can show how and why a breach of the standard of care caused injury. *Id.* The expert is not required to "prove the entire case or account for every known fact," but he must explain the basis of his statements and link his conclusions to specific facts. *Abshire*, 563 S.W.3d at 224; *see also Zamarripa*, 526

7

S.W.3d at 461 ("[W]ithout factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which . . . are clearly insufficient.").

In his report, Dr. Hurt opined as to causation:

(1)     "[D]eath doesn't make sense in this case unless there was a deviation from the standard of care as it relates to monitoring";

(2)     "It is more than likely that what occurred in this case was a distracted provider with decreased monitor volume that did not recognize a machine malfunction in a timely manner to be able to successfully resuscitate Ms. Zubia (these are all things not documented, nor commonly documented)"; and

(3)     "Based upon a reasonable degree of medical probability, it was [Kindle's and MCH's] breaches which were proximate causes" of Zubia's death.

Dr. Hurt also opined that a "contributing factor may have been noise or music in the room," but he recognized "that piece is purely conjecture."

Dr. Hurt opined that a series of events led to Zubia's death, but he did not link that conclusion to any specific facts. As noted previously, there is no description in Dr. Hurt's report of the process by which Zubia's death occurred. Furthermore, there are no facts in Dr. Hurt's report to support any assertion that (1) Kindle was distracted, (2) there was a decreased monitor volume, (3) there was a machine malfunction, or (4) Kindle did not recognize the malfunction in a timely manner. To satisfy Chapter 74, an expert is required to do more than opine that one event probably caused another. *See Jelinek*, 328 S.W.3d at 539–40 (concluding that expert's opinion that health care provider's breach of the appropriate standard of care in "reasonable medical probability, resulted in a prolonged hospital course and increased pain and suffering being experienced by" the plaintiff, without more, was conclusory on causation). Dr. Hurt's "simple *ipse dixit*" is insufficient to establish causation. *See Zamarripa*, 526 S.W.3d at 460 (quoting *Earle v. Ratliff*, 998 S.W.2d

8

882, 890 (Tex. 1999)). We conclude that Dr. Hurt's report does not meet the statutory requirement that it show a breach of the standard of care by either Kindle or MCH caused Zubia's death. CIV. PRAC. & REM. § 74.351(r)(6).

Because the report fails to inform Appellants of the specific conduct challenged and does not sufficiently link Dr. Hurt's opinion on causation to the relevant facts, we conclude that the trial court abused its discretion by denying Appellants' motion to dismiss. *See Jelinek*, 328 S.W.3d at 540; *Bowie Mem'l Hosp.*, 79 S.W.3d at 53; *Palacios*, 46 S.W.3d at 880. Accordingly, we sustain Appellants' issue on appeal.

The TMLA allows a trial court to grant one thirty-day extension to cure a deficiency in an expert report. CIV. PRAC. & REM. § 74.351(c). A trial court must grant an extension if the report's deficiencies are curable. *Zamarripa*, 526 S.W.3d at 461; *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). While Dr. Hurt's report does not specify any conduct by Kindle or MCH that either breached the applicable standard of care or caused Zubia's death, we cannot conclude that it would be impossible to do so. Therefore, the trial court must have an opportunity to consider an extension. *See Zamarripa*, 526 S.W.3d at 461.

### *This Court's Ruling*

We reverse the trial court's order denying Appellants' motion to dismiss and remand this cause to the trial court for further proceedings consistent with this opinion.

June 6, 2019                                                         JOHN M. BAILEY

Panel consists of: Bailey, C.J.,                          CHIEF JUSTICE
Willson, J., and Wright, S.C.J.[3]
(Willson, J., not participating)

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.