**Affirm and Opinion Filed July 2, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00887-CV

## PIRF OPERATIONS, LLC, D/B/A ACCEL REHABILITATION HOSPITAL OF PLANO, Appellant
## V.
## VICTORIA KERR, Appellee

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-04279-2017**

## MEMORANDUM OPINION
Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Myers

This is an appeal from the trial court's order denying the Chapter 74 objections

and motion to dismiss filed by appellant PIRF Operations, LLC, d/b/a/ Accel

Rehabilitation Hospital of Plano (Accel). Accel brings three issues on appeal. We

affirm the trial court's order.

### BACKGROUND AND PROCEDURAL HISTORY

Appellee Victoria Kerr was admitted to Accel Rehabilitation Hospital of

Plano on July 7, 2015, for inpatient rehabilitation "to regain mobility and Activities

of Daily Living." Upon admission, Kerr had a history of increased falling and was

assessed "as a moderate fall risk." Fall precautions were thus employed for Kerr's

stay, including assistance during bathing. Four days later, on July 11, the nursing staff assessed Kerr "as an extreme fall risk." Accel assigned an unidentified hospital staff person ("Jane Doe") to assist Kerr while she showered. Later that day, Jane Doe left Kerr alone in the shower. While unattended, Kerr fell, injuring her lumbar spine, pelvis, toes, and jaw. On further examination, it was revealed that Kerr suffered a compression fracture of her L1 vertebrae, a torn meniscus in her right knee, gashes on and nerve damage to both of her big toes, and a broken jaw as a result of the fall.[1]

Kerr filed her petition against Accel and "Jane Doe" on September 5, 2017, and Accel filed an answer on September 27, 2017. Kerr's petition alleges appellees were negligent and grossly negligent by leaving Kerr unattended in the shower, which resulted in the fall. The petition also alleges Accel was negligent and grossly negligent in failing to adequately screen, train, and supervise Jane Doe.

Kerr's petition alleges that, as a direct and proximate result of appellees' negligence and gross negligence, Kerr sustained injuries to her neck, back, pelvis, knees, toes, and jaw. Her petition seeks damages for reasonable and necessary past medical care and expenses, past and future physical pain and suffering, and past and future mental pain and anguish. Alleging appellees' acts and omissions constituted gross negligence because they were committed knowingly, intentionally, and

---

[1] These facts are drawn from the allegations in Kerr's petition.

recklessly, the petition seeks exemplary damages as permitted under section 41.003(a)(3) of the Texas Civil Practice and Remedies Code.

Because this lawsuit involves a health care liability claim, it is subject to the requirements of Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 74.001–.507. In accordance with Chapter 74, Kerr served on Accel the expert report and curriculum vitae of Karis Schirmer, R.N., B.S.N., on February 11, 2018. Her report reads as follows:

> I have reviewed the Ms. Kerr's chart as you requested, based on that review, I conclude the following:
>
> - On 7/06/2015 a "Pre-Screening" was performed prior to admission and is significant in the fact it was noted the patient was having frequent falls and required 24/7 nursing care for medical and functional management of activities of daily living and ambulation, along with bowel and bladder management, cognition, communication, disease management (Multiple Sclerosis), medical management, "providing a safe environment" and "transfers".
>
> - The nursing station admission assessment on 7/07/15 rates the client fall risk score based on the Morse Fall Scale (copy attached) as a 65 which is classified as a moderated fall risk.
>
> - *Every subsequent nursing assessment beginning on 7/07/15 7pm to 7am shift rates the client as a high fall risk*[.]
>
> - 7/08/15 the History and Physical noted again the patient was having frequent falls and noted she had "deficits of endurance, balance, locomotion, safety awareness, transfer control, and self-care".
>
> - 7/08/15 post-admission physician evaluation states the patient requires 24/7 Rehabilitation nursing for assistance with ambulation and transfer, assisting with all activities of daily living, assisting with ambulation and transfer.

- 7/09/15 Physical therapy notes patient is requiring constant checks for safety as she has poor safety awareness[.]

- 7/10/15 Physical therapy notes the patient is now requiring maximum assistance to sit or stand.

On 7/11/15 sometime during the mid-morning as the time is not actually documented a certified nursing assistant aided the patient to the shower and left her without assistance at which time she fell sustaining injuries.

The patient was known and well documented to be a high fall risk. The nursing standard of care for a patient with generalized weakness from Multiple Sclerosis and frequent falls would have to be in attendance at their side to ensure patient safety.

The patient being left alone in the shower and known to be a high fall risk is directly related to the fall and would fall outside the standard of care.

Kerr, however, did not serve an expert report from a physician. On March 2, 2018, Accel filed "Objections to Plaintiff's Inadequate Chapter 74 Expert Report and Motion to Dismiss," arguing in part that Schirmer's report was inadequate as to causation because it failed to identify any specific injuries sustained by Kerr, and, moreover, that Schirmer is unqualified to opine as to causation because she is a nurse practitioner and not a physician.

In her reply to Accel's motion to dismiss, Kerr argued she submitted the Schirmer report in good faith. However, if the trial court deemed her expert report deficient, Kerr requested a thirty-day extension of time to cure the deficiency under section 74.351(c). Following a hearing on Accel's motion to dismiss, the trial court sustained Accel's objections and granted Accel's motion to dismiss, dismissing the case with prejudice in an order dated May 30, 2018.

Kerr appealed the trial court's order dismissing her health care liability claims to this Court. We concluded Kerr's Chapter 74 expert report represented a good faith effort to comply with the statutory requirements of the Texas Medical Liability Act (TMLA), and that the trial court should have granted Kerr a thirty-day extension of time to cure any deficiencies in her expert report. We reversed the trial court's order and remanded the case to the trial court with instructions to grant Kerr a thirty-day extension to give her an opportunity to cure any deficiencies in her Chapter 74 expert report. *See Kerr v. Pirf Operations, LLC,* No. 05-18-00928-CV, 2019 WL 4027075, at *1 (Tex. App.—Dallas Aug. 27, 2019, pet. denied) (mem. op.).

After the case was remanded to the trial court, Kerr served an expert report and curriculum vitae from Dr. Mark Levin, M.D., a licensed and board-certified physician in internal medicine and oncology and "eligible" in hematology. Dr. Levin's report, filed in the trial court on September 26, 2019, states that he is licensed to practice medicine in New York and New Jersey; he is certified by the American Board of Utilization of Review and Quality Assurance; and he has been in practice since 1990. Dr. Levin's report concludes:

> All my opinions are to a reasonable degree of medical certainty and are subject to modification if new information becomes available.
>
> The difficulty that I encounter with the viability of this case in order to assign causation (I agree that the CNA [certified nursing assistant] violated the standard of care in allowing Ms. Kerr, who was on fall precaution to fall in the shower) is that a previous fall in documentd [sic] on July 7, 2015 and the imaging reports are not conclusive that the fractures identified on the imaging after the July 11, 2015 fall were, in fact, from that fall and the one on July 7th.

–5–

For these reasons, I am unable to support this case.

Shortly thereafter, on October 2, 2019, Accel filed a second Chapter 74 motion to dismiss, arguing the Levin report did not cure the deficiencies in the Schirmer report and that it confirmed Schirmer's report was not curable. Thus, argued Accel, Kerr still had no evidence of medical causation against it, and the case should be dismissed with prejudice.

Kerr responded by filing, on July 21, 2020, the expert report and curriculum vitae of Dr. Paul S. Worrell, D.O., a licensed and board-certified physician in family medicine. Dr. Worrell states that he has been in practice since 1992; he is licensed to practice medicine in Texas; Kerr has been a patient under his care for 20 years; she was diagnosed with multiple sclerosis; and he is familiar with her history and examined her often while under his care. The Worrell report concludes:

> I have personally reviewed her medical history and the following documents in connection with the above referenced matter:
>
> 1. Medical records generated by ACCEL Rehabilitation Hospital of Plano during the period July 6, 2015 through July 23, 2015;
>
> 2. MRI results dated November 9, 2015 from Paul S. Worrell, DO; and
>
> 3. Medical Records from UT Southwestern dated November 9, 2015 through December 11, 2015.
>
> I have also reviewed and noted the factual allegations contained in Ms. Kerr's Petition filed in the above referenced matter.
>
> All my opinions expressed herein arc to a reasonable degree of medical certainty based on the information I reviewed. Of course, in the event new and/or additional information becomes available, my opinions expressed herein could change.

In my personal experience it is known that a fall in a shower may cause injury. Ms. Kerr's medical records that I reviewed show no indication of the injuries she complains of herein prior to July 11, 2015. Since Ms. Kerr was known to be a risk, it is highly likely the injuries she sustained to her lumbar spine, pelvis, right knee, big toes, and jaw were caused by her fall in the shower.

Seven days after filing this report, Kerr next filed, on July 28, 2020, an expert report and curriculum vitae from Dr. Aunali S. Khaku, M.D., M.B.A., a Florida-licensed physician who is board certified in neurology and sleep medicine. Dr. Khaku has been an assistant professor of neurology at the University of Central Florida College of Medicine since 2014. His report concludes:

I have reviewed the details of the provided case. In summary,

The claimant has a history of multiple sclerosis. The provided clinical notes include MRIs which validate the diagnosis. The claimant was admitted to Accel Rehabilitation Hospital of Plano, Texas on July 7, 2015 for inpatient rehabilitation to regain mobility and Activities Living ("ADL's"). There was a well-documented history of increased falling and she was fall assessed as a based moderate fall risk. Accordingly, based on the provided information, precautions were employed, including assistance during bathing.

The provided clinical documentation shows that on July 11, 2015, the nursing staff assessed Ms. Kerr as an extreme fall risk. Reportedly, the claimant was left alone in the shower while bathing resulting in a fall causing injury to the lumbar spine, pelvis, knees, toes, and jaw. Subsequent imaging revealed compression fracture of her L1 vertebra, a torn meniscus in her right knee, and gashes on and nerve damage in both of her big toes, as a result of this fall.

An x-ray dated July 11, 2015 reported and [sic] avulsion fracture of the medial femoral condyle right knee.

Lumbar spine 2 views showed a compression fracture of the L5 vertebrae.

A CT scan of the lumbar spine November 19, 2015 mshowed [sic] an L1 vertebrae body fracture.

An MRI of the lumbar spine report dictated on November 9, 2015 reported a late subacute or recent fracture involving the anterior aspect of the L1 and L2 vertebral bodies.

Based on the provided clinical information, it is my professional opinion that Ms. Kerr's injuries were caused by her fall in the shower. There are no lumbar spine images prior to the injury. An x-ray immediately post-injury documents fracture and recommends MRI. There are no clinical notes documenting any concerns with lumbar injury or fracture prior to the incident. MRIs and clinical notes confirm and document vertebral fracture [sic] following the fall. Imaging criteria describes it as a recent fracture late subacute and not a chronic fracture. Therefore, it is my clinical and professional opinion that the injuries were caused by and subsequent to the fall.

Accel responded to the Worrell and Khaku reports by filing, on August 10, 2020, a third Chapter 74 motion to dismiss. Accel argued the Levin, Worrell, and Khaku reports did not cure the deficiencies in the Schirmer report and that all three reports affirmatively establish that Schirmer's report cannot be cured because medical causation cannot be assigned to Accel. Accel again argued the case should be dismissed with prejudice.

The trial court held a hearing on Accel's motion to dismiss on September 22, 2020. Seven days later, on September 29th, the trial court signed an order denying Accel's Chapter 74 motion to dismiss. This second appeal followed.

## DISCUSSION

Accel brings the following three issues:

1. Whether the expert report of Dr. Levin, which affirmatively found that no causation could be assigned to Accel, contradicted the expert

–8–

reports of Dr. Worrell and Dr. Khaku such that those contradictions required resolution by the trial court?

2. Whether the trial court erred when it failed to resolve the contradictions in the expert reports of Dr. Levin, Dr. Worrell, and Dr. Khaku?

3. The only way to resolve the contradictions in the expert reports of Dr. Levin, Dr. Worrell, and Dr. Khaku is to dismiss this case because the only report to sufficiently address causation affirmatively found that there was no causation which could be assigned to Accel.

The TMLA, codified in Chapter 74 of the Texas Civil Practice and Remedies Code, requires claimants in health care liability cases to serve an expert report on each defendant. TEX. CIV. PRAC. & REM. CODE § 74.351; *Kerr*, 2019 WL 4027075, at *1, *8. The purpose of this "requirement is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018). The report must fairly summarize "the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

A motion to dismiss based on the inadequacy of a report under Chapter 74 can only be granted "if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply" with the statute's definition of an "expert report." *Id*. § 74.351(l), (r)(6). An expert report demonstrates a good faith

effort when it informs the defendant of the specific conduct that is called into question, and it provides a basis for the trial court to conclude the claims have merit. *Abshire*, 563 S.W.3d at 223. It "need not marshal all of the claimant's proof," nor must it meet the same standards as the evidence offered in a summary judgment proceeding or at trial. *Methodist Hosps. of Dallas v. Nieto*, No. 05-18-01073-CV, 2019 WL 6044550, at *7 (Tex. App.—Dallas Nov. 15, 2019, pet. denied) (mem. op.) (citing *Abshire*, 563 S.W.3d at 223 and *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 517 (Tex. 2017) (per curiam)). But it must offer more than an expert's conclusory statements about the standard of care, breach, and damages. *Abshire*, 563 S.W.3d at 223. In other words, "'the expert must explain the basis of his statements to link his or her conclusions to the facts.'" *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

"[O]ne expert need not address the standard of care, breach, and causation; multiple expert reports may be read together to determine whether these requirements have been met." *Abshire*, 563 S.W.3d at 223 (citing § 74.351(i)); *see Nieto*, 2019 WL 6044550, at *7. But "[a] court may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Nieto*, 2019 WL 6044550, at *7. The court may "consider only the information contained within the four corners of the report." *Abshire*, 563 S.W.3d at 223. A trial court's decision to deny a motion to dismiss challenging the adequacy of an expert report is

reviewed for abuse of discretion.  *Id.*

We noted in our previous opinion on this case that Kerr's petition and Schirmer's report provide a clear picture of what happened to Kerr and why she filed suit against Accel.  *See Kerr*, 2019 WL 4027075, at *7.  Schirmer's report "alone provided sufficient detail to inform Accel of the nature and factual basis of Kerr's claims."  *See id*.  As we then summarized, based on Schirmer's report:

Kerr has multiple sclerosis.  Even before admitting her, Accel knew Kerr "was having frequent falls" and "required 24/7 nursing care," including for "ambulation" and the "activities of daily living."  Kerr was assessed as a moderate fall risk upon her admission to Accel, but the very same day, she was re-assessed by Accel nursing staff as a high fall risk.  Accel's physical therapy records caution that, among other things, Kerr "was having frequent falls" and "deficits of endurance, balance, [and] locomotion."  Accel knew Kerr needed to be supervised for all acts of daily living, walking, and standing.  Two days before Kerr fell, unsupervised, in the shower, physical therapy notes warned, "[Kerr] is requiring constant checks for safety as she has poor safety awareness."  An Accel physician evaluation ordered that Kerr "requires 24/7 Rehabilitation nursing for assisting with ambulation and transfer, assisting with all activities of daily living."  The day before Kerr fell when Jane Doe left her alone in the shower, Accel's physical therapy notes alerted the medical staff that Kerr "is now requiring maximum assistance to sit or stand."

As reflected in Accel's own nursing, physician, and physical therapy records, the standard of care Accel owed to Kerr was "24/7 nursing care," "maximum assistance to sit or stand," "assist[ance] with all activities of daily living," "assist[ance] with ambulation and transfer," and "constant checks for safety," because Kerr was a "high fall risk," Kerr was having "frequent falls," and Kerr had "deficits of endurance, balance, locomotion, safety awareness, transfer control, and self-care." In accord with the standard of care ordered by Accel's physicians, physical therapists, and nursing staff, the Schirmer Report plainly stated, "The nursing standard of care for a patient with generalized weakness from Multiple Sclerosis and frequent falls would have to be in attendance at their side to ensure patient safety."  The Schirmer

–11–

> Report stated that Appellees breached the standard of care by leaving Kerr "alone in the shower."

*Id*. at *7–8.  Schirmer, however, is not a physician, and the TMLA requires a physician to opine as to causation.  *See id*. at *6 (expert who gives opinion on causation must be licensed physician and must be otherwise qualified to give opinion on causal relationship under Texas Rules of Evidence) (citing § 74.403(a)).  The question then becomes whether Kerr satisfied this requirement.

Accel contends Kerr's additional expert reports are inadequate because they do not cure the Schirmer report and provide a meaningful discussion of medical causation or how Accel proximately caused Kerr's claimed injuries.  Accel argues the Worrell report asserts that Kerr sustained injuries without identifying the alleged injuries or explaining how they were proximately caused by any actions or inactions of Accel.  Accel also argues that only one injury alleged in Kerr's petition—the compression fracture of her L–1 vertebra—is addressed in Khaku's report, and he does not explain how this injury occurred or the basis for his conclusion it happened in the fall.  Accel further claims that Khaku acknowledges the injury could have been "subsequent to the fall."

As we noted before, however, the expert report requirement may be satisfied by utilizing more than one expert report, and a court may read those reports together.  *See* TEX. CIV. PRAC. & REM. CODE § 74.351(i); *Abshire*, 563 S.W.3d at 223; *Nieto*, 2019 WL 6044550, at *9 n.2.  And expert reports from a doctor and a nurse may be considered together to determine whether there has been a good faith effort to

comply with the Act's requirements. *See Abshire*, 563 S.W.3d at 223–24; *Nieto*, 2019 WL 6044550, at *9 n.2. Furthermore, no magic words such as "caused," "proximate cause," "foreseeability," or "cause in fact" are required because a report's adequacy does not depend on whether the expert uses any particular words. *See, e.g., Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017); *Kerr*, 2019 WL 4027075, at *5 (citing *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011)).

Read together, Kerr's expert reports state that, at the time of her admission on July 7, 2015, she was diagnosed as suffering from multiple sclerosis. She had a well-documented history of increased falling and was assessed "as a moderate fall risk." Based on the provided information, fall precautions were employed—including assistance during bathing. Then, on July 11, 2015, the nursing staff assessed Kerr "as an extreme fall risk." Read together, Kerr's expert reports also state that on July 11 she was left alone in the shower while bathing, resulting in a fall that caused injury to her lumbar spine, pelvis, knees, toes, and jaw. Subsequent imaging revealed, "as a result of this fall," according to Khaku, a compression fracture of Kerr's L1 vertebrae, a torn meniscus in her right knee, and gashes on and nerve damage in both of her big toes. Khaku further states that an x-ray dated July 11, 2015, reported an "avulsion fracture of the medial femoral condyle right knee." "Lumbar spine 2 views showed a compression fracture of the L5 vertebrae." "A CT scan of the lumbar spine" taken on November 19, 2015, showed "an L1 vertebral

–13–

body fracture." Further, Khaku states that a report from an MRI of the lumbar spine dictated on November 9, 2015, "reported a late subacute or recent fracture involving the anterior aspect of the L1 and L2 vertebral bodies."

Khaku opines, "[b]ased on the provided clinical information," that "Kerr's injuries were caused by her fall in the shower." He also states that an x-ray taken "immediately post-injury" documented a lumbar spine fracture; "[t]here are no clinical notes documenting any concerns with lumbar injury or fracture prior to the incident"; and that the MRIs and the clinical notes confirmed and documented a "vertebral facture following the fall." Khaku adds that the imaging criteria described this fracture as a recent late subacute fracture "and not a chronic fracture."

Khaku does not address every theory of liability pleaded by Kerr, but he was not required to do so. As other courts have noted, the expert report "'need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue,'" and a report that satisfies the requirements as to one pleaded theory of liability is sufficient for the trial court to deny a defendant's motion to dismiss. *See, e.g., Fitzpatrick v. Reale*, No. 03-17-00465-CV, 2018 WL 1321535, at *4 (Tex. App.—Austin Mar. 15, 2018, no pet.) (mem. op.) (quoting *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013)). In addition, Khaku's conclusion is that Kerr's injuries were caused "*by and subsequent to the fall*" (emphasis added), not "subsequent to the fall," as suggested by Accel. And, read in the context of his report as a whole, Khaku's statement cannot reasonably be characterized as an

–14–

acknowledgment that Kerr's spinal injury could have been "subsequent to the fall."

Accel, however, maintains that Kerr's expert reports—even, apparently, read together—are insufficient to satisfy the statutory requirement because Dr. Khaku's and Dr. Worrell's reports conflict with Dr. Levin's report. Accel argues the only way to resolve this contradiction in Kerr's expert reports is dismissal. But the only authority Accel cites for this proposition is *Van Ness v. ETMC First Physicians*, where the Texas Supreme Court considered the adequacy of an expert report with conflicting statements about pertussis (whooping cough) after two-month-old Nicholas Van Ness died from the disease. 461 S.W.3d 140, 142–43 (Tex. 2015). The court of appeals held the trial court abused its discretion in denying the healthcare provider's motion to dismiss because the expert report contained conflicting statements—some of which, the court held, failed to link the expert's conclusions to the underlying facts. *Id*. at 143–44. The Supreme Court reversed the appellate court, stating:

> [T]he trial court had discretion—indeed it was incumbent on the trial court—to review the report, sort out its contents, resolve any inconsistencies in it, and decide whether the report demonstrated a good faith effort to show that the Van Nesses' claims had merit. Considering both the report's explication of how Dr. Ault's alleged negligence was causally related to Nicholas's death and the conflicting statements as to that causal relationship, we conclude that the trial court did not abuse its discretion by determining that the report was not conclusory, but was a good faith effort to comply with the TMLA's requirements.

*Id*. Based on *Van Ness*, to the extent Kerr's expert reports are inconsistent or contradictory, the trial court was within its discretion in resolving these issues in

Kerr's favor. *See Naeem v. Gurley*, No. 01-19-00820-CV, 2020 WL 7776083, at *10 (Tex. App.—Houston [1st Dist.] Dec. 31, 2020, no pet.) (mem. op.) ("To the extent that Gurley's expert reports are inconsistent or contradictory with respect to the applicable standard of care or breach or the facts underlying these opinions, the trial court was within its discretion to resolve any such inconsistencies."); *Albo v. Bahn*, No. 01-17-00409-CV, 2018 WL 2204295, at *4–5 (Tex. App.—Houston [1st Dist.] May 15, 2018, no pet.) (mem. op.) ("An expert report that contains inconsistent or contradictory statements, however, may still constitute a good-faith effort to comply with Chapter 74's expert report requirements.") (citing *Van Ness*, 461 S.W.3d at 144).[2]

As we stated in our previous opinion, the facts of this case are not complicated. *See Kerr*, 2019 WL 4027075, at *7. Considered together, Kerr's expert reports sufficiently inform Accel of the specific conduct at issue and provide a clear picture of what happened to Kerr, why she filed suit against Accel, and they demonstrate a good faith effort to comply with the statutory requirements.

We therefore overrule Accel's issues and affirm the trial court's order denying

---

[2] Furthermore, to the extent Accel's argument goes beyond the four corners of Kerr's expert reports and challenges their credibility or the data they may have used, this is not an issue for a Chapter 74 motion to dismiss. *See, e.g., Dorsey v. Raval*, 480 S.W.3d 10, 18 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.) ("[M]erely because an expert report is sufficient to pass muster under section 74.351 does not mean that it will be sufficient to withstand a summary judgment motion."); *Abilene Reg'l Med. Ctr. v. Allen*, 387 S.W.3d 914, 923 (Tex. App.—Eastland 2012, pet. denied) ("If the facts do not support a plaintiff's claim, summary judgment procedures provide a remedy"); *Tenet Hosps., Ltd. v. Boada*, 304 S.W.3d 528, 542 (Tex. App.—El Paso 2009, pet. denied) ("Whether an expert's opinions are correct is an issue for summary judgment, not a motion to dismiss under Chapter 74.").

Accel's Chapter 74 motion to dismiss.

/Lana Myers//
LANA MYERS
JUSTICE

200887f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PIRF OPERATIONS, LLC, D/B/A
ACCEL REHABILITATION
HOSPITAL OF PLANO, Appellant

No. 05-20-00887-CV      V.

VICTORIA KERR, Appellee

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-04279-
2017.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial

court is **AFFIRMED**.  It is **ORDERED** that appellee VICTORIA KERR recover

her costs of this appeal from appellant PIRF OPERATIONS, LLC, D/B/A ACCEL

REHABILITATION HOSPITAL OF PLANO.

Judgment entered this 2nd day of July, 2021.