**Affirmed and Memorandum Opinion filed July 7, 2022.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-20-00698-CV

**NORTH HOUSTON TRMC, LLC D/B/A HCA HOUSTON HEALTHCARE TOMBALL, Appellant**

**V.**

**RANDI POTEET, RHONDA POTEET, AND REBA POTEET AS WRONGFUL DEATH BENEFICIARIES OF MEDALLION POTEET, DECEASED, Appellee**

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2020-02559**

## MEMORANDUM OPINION

In this health care liability case, the defendant-appellant North Houston TRMC, LLC (the "Hospital") appeals the trial court's overruling of objections it filed to the Chapter 74 expert report served on it by the Plaintiff-appellees. We affirm.

## I. Factual and Procedural Background

Plaintiff-appellees, Randi, Rhonda, and Reba Poteet, the three adult children surviving Medallion Poteet (the "Poteet Family"), sought wrongful death and survival claims against the Hospital arising from alleged substandard post-operative care resulting in their mother's death. The Poteet Family served their Chapter 74 expert report, authored by W. Owen Cramer, M.D., a local board certified general surgeon, along with his curriculum vitae. The Hospital timely objected to the report, and the Poteet Family served Dr. Cramer's amended report. As is common in such reports, before setting expert opinions, the report recites the essential facts upon which the opinions are based.

*Medallion's treatment at Tomball Regional Medical Center.*[1]

On October 11, 2018, eighty-two-year-old Medallion Poteet went to the office of Dr. Brian Harkins complaining of abdominal discomfort and bloating. She was diagnosed with cholecystitis (inflammation of the gallbladder), and gastrointestinal reflux. Four days later, on October 15, 2018, at Tomball Regional Hospital, Dr. Harkin performed gallbladder surgery on Ms. Poteet ("a robotically assisted laparoscopic cholecystectomy and fundoplication").

During the immediate postoperative period Ms. Poteet "was noted to have pain of a significant nature which was not being taken care of by pain medication that had been prescribed in an adequate fashion." Later that evening "[Poteet] was noted to be hyposensitive when her normal blood pressure and state was that of an [sic] hypertensive patient." The next day, October 16, 2018, the Hospital's nursing staff alerted the on-call surgeon to her symptoms. The on-call surgeon discovered Poteet was suffering from an "acute abdomen" and decided she needed immediate

---

[1] The facts regarding the treatment discussed here derive from what is provided in the expert report at issue.

surgery. During this surgery the on-call surgeon discovered and repaired "a small bowel perforation that had likely occurred during" the original surgery.

Plaintiffs' expert, Dr. Cramer, states that "although the bowel was repaired and her abdomen adequately washed out, she remained extremely ill and in septic shock. She subsequently died two days later."

*Chapter 74 expert report objections and proceedings.*

The Hospital's subsequent objections to the amended report were the subject of the trial court's order now appealed from. Among other contentions, the Hospital's objections set out the following argument:

> [Dr. Cramer's] deficient opinions directly contradict the medical records. Dr. Cramer claims the nurses should have notified the physician of Ms. Poteet's supposed hypotension on the evening of the 15th. *See* **Exhibit A** at 2.[2] However, the records establish that Ms. Poteet did not become hypotensive until the morning of the 16th, promptly after which the nurses notified the on-call physician. Her blood pressure was well within the parameters set out by her attending physician on the 15th. That is, instead of acknowledging and addressing the facts of this case, Dr. Cramer suggests she had a medical condition that did not yet exist and criticizes the nursing staff for failing to notify the physician of that non-existent condition.

The Hospital did not attach the medical records alleged to contradict the factual recitations in Dr. Cramer's report. Neither party included any of the medical records in any of the papers on file with the trial court. In their written objections to the amended report, the Hospital primarily sought to attack the report's causation opinion as deficient.

*Motion for reconsideration and appeal.*

The trial court overruled the Hospital's objections on September 20, 2020.

---

[2] The Hospital's "Exhibit A" is a copy of Dr. Cramer's expert report.

Five days later, the Hospital moved for reconsideration at which time the Hospital attached various medical records for the first time. With the support of these medical records, the Hospital argued that Dr. Cramer's report misstates the facts and timing of Ms. Poteet's condition while at the Hospital. On October 12, 2020, the Hospital filed its notice of appeal of the trial court's order of September 20, 2020. There is no indication in the clerk's record that the trial judge was ever made aware of or ruled on the motion for reconsideration. The Hospital's appeal relies in significant part on the medical records filed after the trial court's ruling on its objections.

## II. CHAPTER 74 EXPERT REPORT MOTION

In two issues the Hospital complains that the trial court abused its discretion, first in its finding that Dr. Cramer's report represents an objective good faith effort to address the applicable standard of care and breach, and second, by finding his report represents an objective good faith effort to address causation.

### A. Standard of Review.

We apply an abuse-of-discretion standard when reviewing a trial court's decision as to the adequacy of an expert report. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). The trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Although we may not substitute our judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts. *Id.*; *Sanjar v. Turner*, 252 S.W.3d 460, 463 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

### B. Dr. Cramer's Opinions

4

After briefly describing the sequence of events that led to Ms. Poteet's death (discussed above), Dr. Cramer's report sets the standard of care applicable to her post-operative treatment. The standard of care is described in the report as follows:

> The standard of care for nursing personnel when dealing with postoperative patients requires that they report any deviation of what is expected as a normal postoperative course, as well as a deviation of the vital signs, to the attending physician as soon as it is noted.

As applied to the particular facts of the case, the report restates the standard of care and identifies the breach as follows:

- In this case, the prolonged significant postoperative pain that was described by the patient from the laparoscopic procedure, as well as the significant hypotension that occurred late that afternoon and into the evening of the 15th represents a significant change in the status of the patient and should have been immediately passed on to the attending physician or their designated covered physician. This was not done and represents substandard care on the part of the nursing staff at Tomball Regional.

The remainder of the opinion provides the various components of Dr. Cramer's proximate cause opinion. This includes a paragraph about the foreseeability of harm resulting from such a breach, which discusses the level of knowledge expected of hospital nurses, which includes knowledge of the probable results of their inaction. It states, "[i]t is foreseeable to a nurse that if he/she does not notify the attending physician of changes in the patient's status, then the patient will not get adequate medical intervention for their condition." In this paragraph, the report explains that nurses are charged with knowing the following:

- that increased pain and hypotension are significant medical issues which warrant notification of the medical staff.

- that increased pain and hypotension are potential signs of an acute abdomen and that the medical staff must be notified to address these signs and symptoms.

5

- that the failure to address an acute abdomen can lead to serious injury or death of the patient.

The paragraph concludes with the statement that "[t]herefore, it was foreseeable to the nursing staff that failure to communicate the pain and hypotension to the medical staff could lead to Ms. Poteet's death."

The following paragraph sets out Dr. Cramer's description of the causal sequence:

> In this case, the delay in notifying the medical staff of the pain and hypotension direction led to Ms. Poteet's death. On the evening of the 15th, if the nursing staff had contacted the medical staff, then the diagnosis of acute abdomen would have been made and Ms. Poteet would have been immediately taken to surgery on the evening of the 15th as compared to later in the morning on the 16th. Ms. Poteet was showing signs of sepsis on the evening of the 15th, but did not go into septic shock until later on the 16th. If Ms. Poteet had been taken to surgery on the evening of the 15th when the nursing staff noted the pain and hypotension, then the bowel could have been repaired and a washout performed before she went into septic shock. Unfortunately, the delay from the 15th to the 16th allowed Ms. Poteet's sepsis to profess [sic] to the point where she would not recover despite surgery.

Then, Dr. Cramer's states his ultimate causation opinion, that "[i]f the nurses had appropriately communicated with physicians with [sic] the changes and appearance of the patient in the immediate postoperative care an earlier intervention could have occurred which would, in all reasonable medical probability, have saved Ms. Poteet's life."

**C. Chapter 74's "Good-Faith" Requirements**.

Under section 74.351, a claimant, not later than the 120th day after the date a health-care liability claim is filed, must serve on each party one or more expert witness reports addressing liability and causation. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j) (West, Westlaw through 2017 R.S.); *Lewis v. Funderburk*,

253 S.W.3d 204, 205 (Tex. 2008). The statute defines an "expert report" as

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West, Westlaw through 2017 R.S.). A trial court shall grant a motion challenging the adequacy of the expert report if the report is not an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6). *Id.* §§ 74.351(*l*), (r)(6). The law limits the trial court's inquiry to the four corners of the report. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

A compliant report must include an explanation of the basis for the expert's statements and link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52; *Gannon v. Wyche*, 321 S.W.3d 881, 897 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001); *see Wright*, 79 S.W.3d at 53.

To comply with these requirements, and constitute a "good-faith effort," a report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879; *Gannon*, 321 S.W.3d at 889. The report need not marshal all of the plaintiff's proof, but the report must include the expert's opinion on each of the elements identified in the statute: standard of care, breach, and

causation. *Palacios*, 46 S.W.3d at 878–79.

**D. Did the trial court abuse its discretion in concluding that the expert's opinions on standard of care and breach satisfied an objective good-faith effort complying with section 74.351(r)(6)'s definition of an expert report?**

The Hospital's first issue concerns the report's standard of care and breach opinions, but the Poteet family contends that the Hospital's challenges to Dr. Cramer's standard of care and breach opinions are made for the first time on appeal. We address both parties' contentions.

The Hospital's objections in the trial court to Dr. Cramer's amended report set out the legal standards relevant to all required opinions in a Chapter 74's expert report; for standard of care, breach, and causation. In the conclusion of its argument the Hospital attacks, albeit generically, all statutory elements (including standard of care and breach) in its statement: "Dr. Cramer's report fails to satisfy Chapter 74's expert report requirements because it contains only conclusions about the statutory elements in Section 74.351". These facts tend to support that the argument was preserved.

But, to the Poteet Family's preservation point, the analytical section of the Hospital's trial court objection primarily directed the court to review specific complaints to Dr. Cramer's *causation* opinions; not the standard of care or breach opinions. And, at the hearing, the Hospital's attorney focused on Dr. Cramer's causation opinion. Moreover, on appeal, the Hospital's standard of care and breach arguments relate to the Hospital's comparison of facts stated in the report with selected medical records. The Hospital argues that the assumptions that underlie Dr. Cramer's expert report are belied by selected medical records. Though the Hospital raised this extrinsic-evidence argument, it did not characterize it as an attack on the report's standard of care and breach opinions.

But even if we presume for the sake of argument that the court should have been aware that these arguments were challenges to Dr. Cramer's standard of care and breach opinions, there are two problems with the Hospital's arguments. First, the Hospital's extrinsic-evidence arguments (whether directed at the standard of care, breach or causation) were not timely supported by the medical records at the time of the court's ruling on the objections, and therefore not preserved.[3] The medical records were not filed with the trial court until the Hospital filed its motion for reconsideration which was never submitted nor ruled upon. Second, even if the records had been filed with the trial court in the original objection to the expert report, they would have fallen outside the trial court's review, which was limited to the four corners of the expert report. *American Transitional Care Centers of Texas v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012)("In *Palacios* we held that the TMLA's language requires a trial court to determine a report's adequacy from its four corners.")

Dr. Cramer's opinions—which identify both the general standard of postoperative care expected of the nurses, and in context, specific acts the nurses were expected to but failed to perform to meet that general standard—were thus not mere conclusions about the statutory elements. *See, e.g.*, *Baty v. Futrell*, 543 S.W.3d 689, 695 (Tex. 2018) (report not conclusory where it did not require one to infer what physician defendant should have done differently); *Whitmire*, 2020 WL 4983321, at *19 (expert's report was not vague or conclusory because it identified nurse's specific negligent conduct—failure to recognize signs of preterm labor, and adequately described what should have been done differently).

We therefore overrule appellant's first issue.

---

[3] Tex. R. App. P. 33.1.

9

**E. Did the trial court abuse its discretion in concluding that the expert's opinions on causation satisfied an objective good-faith effort complying with section 74.351(r)(6)'s definition of an expert report?**

The Hospital's second issue concerns Dr. Cramer's report's causation opinions. Proximate cause encompasses two components: (1) foreseeability and (2) cause-in-fact. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—*i.e.*, but for the act or omission—the harm would not have occurred. *Id.* For the amended report to suffice as to causation, in it Dr. Cramer must explain "how and why" the alleged negligence caused Ms. Poteet to go into septic shock that resulted her untimely death, set forth the basis for his statements, and link his conclusions to specific facts. *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018).

The report explains both *how* prompt communication from the nursing staff would have prevented Poteet's septic shock and subsequent death — by allowing the treating physician to make an earlier diagnosis of the perforated bowel, and *why* the delay ultimately caused Poteet's death — because of the delay, she was already in septic shock at the time of her second surgery. See *Abshire*, 563 S.W.3d at 224.

We disagree with the Hospital's contention that Dr. Cramer's report leaves "gaps in the chain of causation" or is based on "impermissible assumptions" about how Ms. Poteet's treating physicians would respond.[4] In two pages, Dr. Cramer's report:

---

[4] Moreover, for the reasons already discussed, the extrinsic evidence relied on to support the Hospital's challenge to the facts Dr. Cramer has relied on in his report are unavailing at this stage in the case.

(1) explains that the Hospital's nurses were required to notify the attending physician of any worsening of Poteet's condition;

(2) details how the nurses failed to notify the attending physician of Poteet's "prolonged significant postoperative pain" and "significant hypotension,"

(3) sets out knowledge charged to hospital nurses, and the foreseeability of the harm that would follow from the nurses' failure to notify and explains that the nurses should have been aware of these risks

(4) provides the relevant conclusions concerning attending physican's anticipated response and outcome of an earlier notification of Poteet's symptoms,[5] and

(5) explains that this delayed reporting of Ms. Poteet's worsening condition delayed the diagnosis of acute abdomen and ultimately led to her death.

We conclude the trial court did not abuse its discretion in its implicit finding that Dr. Cramer's causation opinions satisfied an objective good-faith effort complying with section 74.351(r)(6)'s definition of an expert report. *See, e.g.*, *Abshire*, 563 S.W.3d at 225 (holding expert's report provided a "straightforward link" between nurses' failure to properly document patient's pain, to a delay in diagnosis and proper treatment, and the ultimate injury); *Tex. Children's Hosp. v. Knight*, 604 S.W.3d 162, 180 (Tex. App.—Houston [14th Dist.] 2020, pet. filed) (holding expert's report satisfied TMLA where opinion explained the nursing staff's failure to notify the physicians of signs of circulatory distress caused a delay in the physician's diagnosis, which led to the plaintiff's injury).

---

[5] In addition to the causation opinions discussed in section II.B above, the report provides the conclusion that the on-call physician, if notified, would have acted:

> [I]f the attending physician or the physician's designate had been made aware of the persistent significant pain, as well as hypotension, by the evening of the 15th that an evaluation would have occurred by the physicians monitoring the patient and they would have taken Ms. Poteet back to the operating room, resolved the injury to the small bowel, and she would in all reasonable medical probability, be alive today.

We therefore overrule appellant's second issue.

### III. CONCLUSION

Dr. Cramer's report meets the applicable statutory standards for health care liability case expert opinions. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r). We therefore overrule the Hospital's issues and affirm the trial court's order overruling its objections.

/s/    Randy Wilson
        Justice

Panel consists of Chief Justice Christopher, and Justices Zimmerer and Wilson.