

# NUMBER 13-22-00519-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERT GARCIA,                                                                                                 Appellant,

v.

EXTREME TACTICS AND
TRAINING SOLUTIONS, LLC,                                                                          Appellee.

## ON APPEAL FROM THE 40TH DISTRICT COURT
## OF ELLIS COUNTY, TEXAS

## OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña
Memorandum Opinion by Justice Peña**

Appellant Robert Garcia appeals the trial court's order granting appellee Extreme

Tactics and Training Solutions, LLC's (Extreme) motion challenging the adequacy of

Garcia's expert report and dismissing his claims. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 128.053 (requiring that plaintiff serve an expert report in a suit against a sport shooting range). In three issues, Garcia argues the trial court erred by: (1) concluding that his expert report was deficient; (2) not allowing an extension to cure deficiencies in the report; and (3) awarding attorney's fees that exceeded what was reasonable and necessary. We reverse and remand.[1]

## I. BACKGROUND

Garcia resides in a neighborhood near a sport shooting range operated by Extreme. Garcia sued Extreme, alleging that the shooting range is a nuisance and seeking injunctive and declaratory relief as well as actual damages and attorney's fees.[2] *See id.* § 128.052(c) ("Damages may be awarded, or an injunction may be obtained, in a civil action brought under this section if the claimant shows by a preponderance of the evidence, through the testimony of one or more expert witnesses, that the sport shooting range, the owner or operator of the sport shooting range, or the owner of real property on which the sport shooting range is operated deviated from the standard of care that is reasonably expected of an ordinarily prudent sport shooting range, owner or operator of a sport shooting range, or owner of real property on which a sport shooting range is operated in the same or similar circumstances."). Garcia alleged that the shooting range was not constructed in a safe manner, allowing bullets to leave the range and enter the adjacent residential area. Garcia further alleged that more than twenty bullet fragments were found on properties near the shooting range. According to Garcia, he heard a bullet

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] Garcia abandoned a claim for intentional infliction of emotional distress.

ricochet followed by the sound of an impact while he was in his front yard. Garcia called law enforcement, who discovered a bullet in Garcia's driveway as well as evidence of a bullet impact to Garcia's vehicle.

Garcia attached the report and curriculum vitae of Richard C. Whiting to his petition. Whiting, a shooting range consultant and author of the National Rifle Association's (NRA) Range Manual, stated that he visited and evaluated the shooting range "from outside the boundaries" of the property. He also utilized images from Google Earth. Whiting specified the following standards of care and deviations therefrom:

a) None of the side berms or backstops on the property appear to be have [sic] been constructed to any standard. The berms and backstops appear to consist of nothing more than pushed up dirt and soil. The berms and backstops should have been constructed in accordance with highway construction standards for soil compaction and should utilize soil erosion control systems. The berms and backstops are inadequate to ensure that all bullets and bullet fragments do not leave range property.

b) The shooting bays face outwards towards neighboring properties, which increases the likelihood of bullets leaving the property.

c) The shooting range was constructed without any consideration of primary and secondary impact areas and without any consideration of surface danger zones (SDZs).

d) The surface danger zone for the 1000/1200-yard range extends far beyond the shooting range property boundaries and onto neighboring properties. There is no way to properly baffle the existing 1000/1200-yard range, which has allowed bullets to escape, impacting in the area of Eubanks Road and other surrounding properties, which has been verified in police reports. The backstop is insufficient for the long-range rifle and was constructed near the downrange property line, which is contrary to any reasonable standard for firing range design, construction, and use.

e) There are no secondary impact areas for the shooting ranges. As such, any ricochets bullets or bullets fragments can end up on neighboring properties.

f) The 200-yard range should employ overhead baffles that extend the entire width and length of the range, but currently such devices either do not exist or are inadequate to contain bullets to range property. The sidewalls of the 200-yard range should be no less than 10[ ]feet in height, and the backstop should be no less than 20[ ]feet in height, provided overhead baffles are used to contain bullets on range property.

g) The metal targets used by [Extreme] create ricochets and splatter capable of being deposited on the neighboring property that does not belong to or is [sic] controlled by [Extreme].

h) The property that the shooting range sits on is not of sufficient size for the types of firearms that are discharged on range property.

According to Whiting, he was present when a nearby resident discovered three bullets on his property. Whiting believed that the bullets were leaving the shooting range due to "inadequate methods employed to contain bullets, and carelessness of the operation." Whiting opined that the shooting range was constructed in contravention of the NRA Range Manual and without the assistance of a range consultant, engineer, or architect. He concluded that the construction and operation of the shooting range deviates from the standard of care reasonably expected and that the range presents a clear and present danger to the neighboring residents.

Extreme filed an answer as well as a motion challenging the adequacy of Whiting's report.[3] *See id.* In its motion, Extreme argued that the report did not establish the applicable standard of care, deviation from the standard of care, or a causal relationship between the deviation and Garcia's injury. Extreme maintained that Texas Health & Safety Code § 756.042, from which Whiting's standard of care was purportedly derived is unconstitutional. *See* TEX. HEALTH & SAFETY CODE ANN. § 756.042 (requiring outdoor shooting ranges to be constructed and maintained according to standards that "are at

---

[3] Extreme also filed a countersuit seeking declaratory relief which it later non-suited.

4

least as stringent as the standards printed in the [NRA] Range Manual"). Extreme further argued that Whiting's report was not based on personal knowledge because he only viewed the range premises from outside the boundaries of the property. Extreme attached several exhibits to its motion which it contended refuted Whiting's factual assertions.

Extreme later filed a supplement to its motion, repeating its earlier arguments while also attaching additional evidence refuting Whiting's opinions. Extreme further emphasized that the report fails to mention the causal relationship between Extreme's deviation from the standard of care and Garcia's injury. Extreme sought attorney's fees of $240,095.84 should its motion be successful as well as contingent appellate fees.

Garcia filed a response to Extreme's motion and a supplement thereto, arguing that the Whiting report meets the good faith standard required to comply with § 128.052(3) of the civil practice and remedies code and that the trial court was limited to reviewing the four corners of Whiting's report to determine its adequacy. Garcia urged that Extreme's supplemental motion should be stricken because it was not timely filed. Alternatively, Garcia argued that the trial court should grant him a thirty-day extension to cure any deficiencies in the expert report. Extreme then filed a reply to Garcia's response emphasizing Whiting's failure to address causation.

Following a hearing, the trial court signed an order granting Extreme's motion challenging the adequacy of Garcia's expert report, dismissing Garcia's suit, and awarding the requested attorney's fees. This appeal followed.

## II. EXPERT REPORT REQUIREMENT

Section 128.053 of the civil practice and remedies code imposes "a threshold expert report requirement that must be satisfied before a claimant may proceed with a

5

lawsuit" against a sport shooting range. *Shinogle v. Whitlock*, 596 S.W.3d 772, 776 (Tex. 2020) (per curiam). The statute requires a claimant suing a sport shooting range to serve each party in the litigation with an expert report and curriculum vitae. TEX. CIV. PRAC. & REM. CODE ANN. § 128.053(a). An expert report must provide a fair summary of the expert's opinions regarding "[(1)] applicable standards of care for operation of a shooting range, [(2)] the manner in which a defendant failed to meet the standards, and [(3)] the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 128.051(4).

The report is due within ninety days after the claimant files the original petition, and a defendant must serve any objections to the sufficiency of the report no later than the twenty-first day after the report is served. *Id.* If an expert report has not been served within the required time, the trial court, upon the motion of the defendant, shall enter an order that: (1) awards the defendant attorney's fees and costs; and (2) dismisses the claim with prejudice. *Id.* § 128.053(b). "A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after a hearing, that the report does not represent an objective, good faith effort to comply with the requirements of an expert report." *Id.* § 128.053(e). "If an expert report has not been served within the [required] period . . . because elements of the report are found deficient, the court may grant one extension of not more than 30 days to the claimant in order to cure the deficiency." *Id.* § 128.053(c).

We review a trial court's ruling on a motion to dismiss for failure to comply with the expert report requirement for an abuse of discretion. *Barrett Firearms Mfg., Inc. v. Flores*, 673 S.W.3d 353, 356 (Tex. App.—San Antonio 2023, pet. denied) (citing *Baty v. Futrell*,

6

543 S.W.3d 689, 693 (Tex. 2018)). A trial court abuses its discretion if it "does not analyze the law correctly or misapplies the law to the facts." *Id.* (citing *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011)). Precedent analyzing analogous expert report statutes, such as chapter 74 of the civil practice and remedies code, is instructive to our application of § 128.053.[4] *See Shinogle*, 596 S.W.3d at 776; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (requiring an expert report for health care liability claims). In applying the good-faith standard in the context of chapter 74, courts require that the report provide enough information to "inform the defendant of the specific conduct the plaintiff has called into question" and "provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001). In other words, "to constitute a good-faith effort, a report must explain the basis of the expert's statements and link his or her conclusions to the facts of the case." *Taha v. Blackburn*, 656 S.W.3d 596, 600–01 (Tex. App.—El Paso 2022, no pet.); *see Palacios*, 46 S.W.3d at 879. The plaintiff is not required to prove his claim with the expert report, but the report must show that a qualified expert is of the opinion that he can. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). Whether an expert report constitutes a "fair summary of the expert's opinions" is determined based on the four corners of the report, taken as a whole. *E.D. ex rel. B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022).

### III. DISCUSSION

In his first issue, Garcia argues that the trial court erred in dismissing his suit because Whiting is a qualified expert and his report constitutes an objective, good-faith

---

[4] We note that the applicable provisions in this case are nearly identical in all relevant respects to § 74.351. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351, *with* §§ 128.051(4), 128.053.

7

effort to establish each challenged element. Extreme concedes on appeal that Whiting is qualified and that the report is not "fatally deficient" regarding the standard of care and deviation therefrom. However, Extreme maintains that the report is deficient because it completely fails to address causation.[5]

We agree with the parties that the expert report represents an objective, good-faith effort to address (1) the applicable standard of care for operation of a shooting range and (2) the manner in which Extreme allegedly failed to meet the standard. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 128.051(4); *Palacios*, 46 S.W.3d at 878–79. As to these elements, the report explains the basis for Whiting's statements and links his conclusions to the facts of the case. *See Taha*, 656 S.W.3d at 600–01. In particular, the report details the standards for construction of a shooting range with the aim of keeping bullets from leaving the property and the manner in which Extreme's facility deviated from those standards.

As to causation, Garcia generally asserts that the Whiting report is sufficient because it provides that Extreme's deviation from the standard of care allowed bullets to end up on neighboring properties. Extreme responds the report completely fails to address causation. It notes that the report addresses bullets found on other properties in the neighborhood but fails to address how any bullet travelled from the shooting range to Garcia's property, in particular.

To satisfy the causation requirement, an expert must explain, based on the facts set forth in the report, how and why the defendant's deviation from the standard of care

---

[5] Garcia argues that it would have been improper for the trial court to consider any evidence outside of the four corners of the report, a point which Extreme does not dispute on appeal. We agree. *See E.D. ex rel. B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022). Therefore, we do not consider such evidence in our analysis.

caused the plaintiff's injury. *Zamarripa*, 526 S.W.3d at 459–60. "A bare expert opinion that the breach caused the injury will not suffice." *Id.* at 460 (quoting *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015)). "In showing how and why a breach of the standard of care caused injury, the expert report must make a good-faith effort to explain, factually, how proximate cause is going to be proven[.]" *Id.* The following elements comprise proximate cause: (1) foreseeability and (2) cause-in-fact. *Id.* "For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—*i.e.*, but for the act or omission—the harm would not have occurred." *Id.* (quoting *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (per curiam)).

Whiting generally explains how Extreme's deviation from the standard of care presented a danger to nearby properties, and he opines that the bullets found on the property of certain homes not belonging to Garcia exited the range due to "inadequate methods employed to contain bullets, and carelessness of the operation." However, Whiting offers no opinion regarding Garcia's property. Specifically, Whiting does not reference the location of Garcia's property or whether Extreme's deviation from the standard of care was the reason that bullets were found on Garcia's property. Because Whiting does not explain in non-conclusory fashion and based on the facts set forth in the report, how and why Extreme's deviation from the standard of care caused Garcia's injury in particular, the report is deficient as to causation. *See id.* at 459–60; *see also Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018) ("A conclusory statement of causation is inadequate."); *THN Physicians Ass'n v. Tiscareno*, 495 S.W.3d 599, 614

9

(Tex. App.—El Paso 2016, no pet.) ("[T]he expert must at a minimum explain the connection between [defendant's] conduct and the injury to the [plaintiff].").

However, there is a distinction between a deficient report, subject to an extension, and "no report," which requires dismissal. *See Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011). A trial court may grant "a thirty-day extension to cure deficiencies in an expert report . . . if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 128.053(c). When a trial court finds deficiencies within an expert report, it should "err on the side of granting the additional time and must grant it if the deficiencies are curable." *Scoresby*, 346 S.W.3d at 549. An individual's "lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so." *Id.*; *see Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 840 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("[M]ost purported expert reports are likely to fall into the deficient-report category and be eligible for a thirty-day extension."). We conclude that Garcia satisfied this "minimal" and "lenient" standard and that the trial court abused its discretion by granting the motion to dismiss without affording Garcia an opportunity to cure the deficiency. *See Scoresby*, 346 S.W.3d at 554, 557.

We overrule Garcia's first issue as it pertains to causation. We sustain Garcia's second issue. We need not address Garcia's third issue because it is not necessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

## IV.    CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
24th day of October, 2024.