**Opinion issued December 2, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00351-CV

————————————

**METHODIST HEALTH CENTERS AND THE METHODIST HOSPITAL,
Appellants**

**V.**

**SCOTT MACKENDER, Appellee**

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case No. 2023-50367**

## MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's order denying a motion

to dismiss a healthcare liability claim based on inadequate expert reports.

Scott Mackender sued Methodist Health Centers and he Methodist Hospital

("Methodist") for negligence, alleging that he contracted a bacterial infection from

Methodist's failure to promptly remove his intravenous catheter ("IV"). To comply with the Texas Medical Liability Act ("TMLA"), Mackender served expert reports, one of which was from Dr. Warren Gavin, the only expert who could opine on causation. Methodist moved to dismiss, alleging Dr. Gavin's explanation of causation was insufficient.

In its sole issue, Methodist contends that the trial court erred by denying its motion to dismiss based on Dr. Gavin's inadequate expert report.

We hold that Dr. Gavin's expert report was sufficient under the TMLA. We affirm the trial court's order.

## Background

Methodist treated Mackender for pneumonia due to COVID-19. The day he was admitted to the hospital, a peripheral IV was placed in his right arm. Although he complained of issues with his IV and drainage was noted on the sixth day of his hospital stay, the IV was not removed until four days later. When the IV was removed, it had old drainage residue and was damaged. After twelve days in Methodist's care, Mackender was discharged.

Mackender continued to have pain and inflammation at the IV site, so he saw his primary care physician three days later. His physician diagnosed Mackender with cellulitis, an infection, in his right arm where the IV was placed. Mackender was still

2

experiencing symptoms two months later, so he went to a different hospital. There, he was diagnosed with sepsis and bacteremia.

To support his healthcare liability claim against Methodist, Mackender served expert reports from Dr. Gavin and nurse Yannique Mack. Methodist objected to the adequacy of both expert reports, alleging that (1) Nurse Mack was not qualified to offer causation opinions as a matter of law; and (2) Dr. Gavin's opinions on causation were conclusory and speculative.

The trial court sustained Methodist's objections and allowed Mackender to file an amended report provided by Dr. Gavin. But Methodist objected to the amended report and moved to dismiss Mackender's claims. It argued that Dr. Gavin's amended report was still conclusory and speculative because he did not explain how relocating the IV earlier would have prevented the infection. The trial court denied Methodist's motion.

## Motion to Dismiss

In its sole issue, Methodist contends that the trial court abused its discretion in denying its motion to dismiss for failure to serve an adequate expert report on the element of causation.

### A. Standard of Review

We review a trial court's decision on a motion to dismiss based on the adequacy of an expert report(s) under the TMLA for an abuse of discretion. *Bush v.*

3

*Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 714 S.W.3d 536, 544 (Tex. 2025). "Under that standard, [we] defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Id.* We may not substitute our judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see Van Ness*, 461 S.W.3d at 144 (holding that trial court had duty to review report, analyze its contents, resolve any inconsistencies, and decide whether report demonstrated good faith effort to show claims had merit). "[C]lose calls must go to the trial court." *Bush*, 714 S.W.3d at 544.

## B. Applicable Law

The TMLA requires a plaintiff asserting health care liability claims to timely serve each defendant physician and health care provider with one or more expert reports and a curriculum vitae of each expert whose opinion is offered to substantiate the merits of the plaintiff's claims. TEX. CIV. PRAC. & REM. CODE § 74.351(a), (i). An expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards,

4

and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6).

"Importantly, the trial court need only find that the report constitutes a 'good faith effort' to comply with the statutory requirements." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018); TEX. CIV. PRAC. & REM. CODE § 74.351(l). "A report represents a good-faith effort if it (1) informs the defendant of the specific conduct called into question and (2) provides a basis for the trial court to conclude the claims have merit." *Bush*, 714 S.W.3d at 543. At this early stage of litigation, the adequacy of an expert report is measured by a "lenient standard" because the expert report requirement is to "weed out frivolous malpractice claims," not adjudicate potentially meritorious ones. *Id.* Thus, "[t]he expert report is not required to prove the plaintiff's case but only to provide notice of the conduct forming the basis of the plaintiff's claim." *Curnel v. Houston Methodist Hosp.-Willowbrook*, 562 S.W.3d 553, 562 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

When analyzing the adequacy of a report, courts consider "only the information contained within the four corners of the report." *Bush*, 714 S.W.3d at 544. This information must be considered in its entirety, rather than isolating specific portions or sections, to determine whether it (1) informs the defendant of the specific conduct called into question and (2) provides a basis for the trial court to conclude the claims have merit. *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018); *see also*

5

*E.D. ex rel. B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 667 (Tex. 2022). If the report as a whole "includes all the required elements and explains their connection to the defendant's conduct in a non-conclusory fashion," it is adequate. *Bush*, 714 S.W.3d at 543 (citation modified).

Only a qualified physician may provide an expert opinion regarding "the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim . . . ." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(C). An expert sufficiently addresses causation "when the expert explains 'how and why' breach of the standard caused the injury in question by explaining the basis of his statements and linking conclusions to specific facts." *E.D.ex rel. B.O.*, 644 S.W.3d at 664 (citation modified). To adequately articulate the causal relationship, the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes 'a good-faith effort to explain, factually, how proximate cause is going to be proven.'" *Bush*, 714 S.W.3d at 544.

"Proximate cause consists of (1) cause in fact, and (2) foreseeability." *Windrum v. Kareh*, 581 S.W.3d 761, 777 (Tex. 2019). "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id.* (citation modified). A defendant's act or omission does not need to be the sole cause of an injury, nor the immediate

6

cause of the injury, if it is a substantial factor in bringing about the injury. *Id.* at 777–78. Cause in fact is not established when a defendant's negligence is not the active cause of the injury but merely created the condition by which made the injury possible. *Id.* at 778; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). "Foreseeability asks, what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances." *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 537 (Tex. 2025) (citation modified). A health care provider's breach is a foreseeable cause of the plaintiff's injury if a health care provider of ordinary intelligence would have anticipated the danger caused by the negligent act or omission. *Curnel*, 562 S.W.3d at 562.

At this stage, the court must determine whether the expert has explained how the negligent conduct caused the injury. *Bush*, 714 S.W.3d at 544. The report does not need to "rule out every possible cause of the injury, harm, or damages claimed." *Curnel*, 562 S.W.3d at 562. Thus, our inquiry is whether Dr. Gavin's report has made a good-faith effort to connect Methodist's breach of the standard of care and Mackender's injuries.

**C. Adequacy of Dr. Gavin's amended expert report on the element of causation**

In his amended expert report, Dr. Gavin opined that Methodist deviated from the standard of care by failing to remove Mackender's IV in accordance with hospital policy and by keeping the same IV in the same place for ten days, despite the old drainage residue noted on the sixth day. His report states, "the patient developed cellulitis from bacterial entry at the IV site." He noted that the infection could have been avoided by the appropriate removal of the line (and placement in a new location) at the time the drainage was discovered, and in accordance with Methodist's hospital policy. He explained that the risk of contracting a Staphylococcus aureus ("Staph") skin colonization and infections in a hospital setting is extremely high, which is why safe practices are in place to avoid hospital-acquired infections, such as the one Mackender suffered. Under his "causation heading," Dr. Gavin explained that:

- The deviations from the standard of care with regard to Mackender's IV resulted in him developing cellulitis that may have been prevented;

- Mackender suffered from complications related to Staph bacteremia, of which cellulitis is a known etiology;

- The violations in the standard of care greatly increased the likelihood of a Staph infection;

- Mackender's IV site became infected after discharge from Methodist;

- The breaches in standard of care by Methodist caused the cellulitis and resultant bacteremia within a reasonable degree of medical probability;

8

- Specifically, the Staph bacteria initially infected the skin (cellulitis), but then entered the bloodstream (bacteremia), which was Mackender's eventual diagnosis; and

- Had Methodist not deviated from the standard of care, Mackender would not have been infected with Staph at his IV site and would not have developed bacteremia.

Methodist contends that Dr. Gavin's amended report fails to explain how or why moving Mackender's IV would have avoided his infection. Mackender responds that Methodist focuses solely on three paragraphs under the "causation" heading and does not consider the entire report, which adequately explains causation.

An expert may show causation by explaining a chain of events that begins with the health care provider's negligence and ends in the plaintiff's injury. *Denduluri v. Bravo*, No. 01-22-00230-CV, 2023 WL 4003520, at *5 (Tex. App.—Houston [1st Dist.] June 15, 2023, no pet.). Here, Dr. Gavin's amended report, viewed in its entirety, attributes Mackender's contraction of cellulitis, and ultimately, bacteremia, to Methodist's unreasonable delay in relocating Mackender's IV.

As to cause in fact, Dr. Gavin asserted that if Methodist had not deviated from the standard of care, then Mackender would not have developed Staph at his IV site. Earlier in his report, Dr. Gavin explained that Methodist breached the standard of care by failing to relocate the IV and change the catheter when drainage was

observed and by failing to remove the IV consistent with hospital policy and the general time for IV retention. Dr. Gavin opined that these breaches greatly increased the likelihood of a Staph infection. He clarified that Mackender developed cellulitis from bacterial entry at the IV site, and this infection could have been avoided by appropriate removal of the IV line. Under the applicable good faith standard for expert reports, Dr. Gavin's amended report adequately explains how the failure to remove Mackender's IV was a substantial factor in bringing about Mackender's injuries. *See Abshire*, 563 S.W.3d at 223; TEX. CIV. PRAC. & REM. CODE § 74.351(l).

As to foreseeability, Dr. Gavin opined in his amended report that the prevalence of Staph skin colonization and infections in a hospital setting are very high. He explained if the nurse had removed the patient's IV when old drainage was noted, Mackender would have avoided increased risk of infection. Additionally, the report notes that cellulitis is a known etiology of Staph. Thus, Dr. Gavin's amended report makes a good faith effort to explain that a health care provider of ordinary intelligence would have anticipated the danger caused by leaving the IV line in the same place for too long. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(l).

Methodist argues that Dr. Gavin's use of the phrase "may have been prevented" indicates a possibility, which is deficient as a matter of law. But the Texas Supreme Court has consistently held, "[A] report's adequacy does not depend on whether the expert uses any particular 'magic words.'" *Bowie Mem'l Hosp.*, 79

10

S.W.3d at 53 (explaining that use of term "possibility" instead of "reasonable medical probability" does not render the report inadequate); *see Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001) ("[T]o avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits").

In his amended report, Dr. Gavin opined that Mackender's cellulitis "likely could have been avoided" had Methodist followed the standard of care (and its own policies) for IV removal. Dr. Gavin further opined that the cellulitis resulted in bacteremia. He set out the timeline of events and sufficiently connected Methodist's breach of the standard of care to Mackender's injuries. Under the "fair summary" standard, the amended report sufficiently informs Methodist of the specific conduct at issue and provides a basis for the trial court to conclude Mackender's claims have merit. *Bush*, 714 S.W.3d at 551–52.

For these reasons, we conclude the trial court did not abuse its discretion by determining Dr. Gavin's explanation of causation was a good faith effort to comply with TMLA's requirements. Accordingly, we hold that the trial court did not abuse its discretion by denying Methodist's motion to dismiss.

We overrule Methodist's sole issue.

11

## Conclusion

We affirm the trial court's order.


Clint Morgan
Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.